JONATHAN I. BOWDITCH & others *vs.* COUNT HENRI SOLTYK & others.

A will proved in Massachusetts, where the testator had his domicil, directed trustees of his estate " to raise the sum of one hundred and fifty thousand francs, money of France, and to apply the same to the fulfilment of a certain marriage contract," made at Geneva in Switzerland, in which the testator, the father of the future wife, agreed to pay to her an annuity of six thousand francs, money of France, to cease at his death and " be then converted into a capital of one hundred and fifty thousand francs, which should " only be handed over to the future wife or to her children against a sufficient mortgage, or any other equivalent guaranty, to be given by the future husband." After the death of the testator, the husband executed an instrument at Vienna in Austria, renouncing all right in this fund, and declaring it unnecessary for him to give security for a sum which he never received. Subsequently, at Cracow in Austria, where the husband and wife had their domicil at the time, an ecclesiastical court granted to her a decree of divorce from bed and board for life, for his criminal conduct, reserving to her and to their son " all the rights of property which according to the law of the land belong to an innocent wife and the children," and declaring that, " notwithstanding the decree of divorce for life, she remains at liberty to consent to live together with her husband in case he should bring sincere proofs " of reformation. By the law of Geneva and of Austria, a payment of the fund to her, without due security for its proper investment according to the marriage contract, would not discharge the trustees from responsibility, notwithstanding the release of the husband and the divorce. *Held*, that the amount to be raised from the estate for the fund was such a sum, computed in treasury notes of the United States, as would purchase a hundred and fifty thousand francs deliverable here; and that the trustees should continue to hold the fund in trust for the benefit of the wife, until the further order of the court, with liberty to apply for further instructions ir vent of the death of her, or of her husband, or other change of circumstances.

The costs of a bill in equity brought by executors and trustees to obtain the instruction of the court as to the construction of a bequest are to be borne by the residuary assets.

GRAY, J. This is a bill in equity by the executors and trustees under the will of Edward V. Childe, of Boston, to obtain the directions of the court as to the construction and effect of the first clause in his will, by which he directs them " to raise the sum of one hundred and fifty thousand francs, money of France, and to apply the same to the fulfilment of a certain marriage contract," made in 1853 at Geneva in Switzerland between his daughter and Count Soltyk of Poland, and signed by them and also by Mr. Childe and his wife.

The original marriage contract has not been submitted to us. But, according to a translation which the parties have agreed to be correct, its material articles are as follows : " The future couple declare that their intention is to marry under the *regime dotal*." Mr. Childe assigns and promises to pay to his daughter, and, in case of her dying before him leaving children, to her children, until his death, an annuity of six thousand francs, money of France. " At the decease of the said Mr. Childe, the said annuity will cease, and will be then converted into a capital of one hundred and fifty thousand francs, which will only be due and demandable in case the future wife, or children issued from the present marriage, should survive the said Mr. Childe. The said capital will only be handed over to the future wife or to her children against a sufficient mortgage, or any other equivalent guaranty, to be given by the future husband."

In 1862, after the death of the testator, Count Soltyk, by an instrument in writing executed at Vienna, declared that it was unnecessary for him to give a mortgage or other guaranty for a sum which never came into his hands, and renounced all right in the principal or interest of the sum of one hundred and fifty thousand francs. In 1866, an ecclesiastical court in Cracow in Austrian Poland, where the husband and wife then had their domicil, granted to her, for her husband's adultery, desertion and squandering his inherited property in gambling, a decree of divorce from bed and board for life, with the right to educate

their son, (who is still living,) and reserving to her and to **him** " all the rights of property which according to the law of the land belong to an innocent wife and the children," yet declaring that, " notwithstanding the decree of divorce for life, she remains at liberty to consent to live together with her husband in case the same should bring sincere proofs that he on his part will forever remove the causes on the strength of which this divorce from bed and board has been granted; all of which in the spirit of the sanctity of the matrimonial sacrament is very desirable, and for both man and wife would carry with it the blessing cf God."

The wife has appeared and submitted to the jurisdiction of this court; and notice has been given to the husband, and the bill taken for confessed against him, in accordance with the rules of court and the ordinary practice in chancery. The will has been proved in Massachusetts, the trust property is here, the plaintiffs reside here and derive their rights as executors and trustees to hold the property from the courts of this state, and are accountable to those courts for the due performance of their trusts, and one of them is sole residuary legatee of all the property not bequeathed to Countess Soltyk. There can be no doubt, therefore, of the jurisdiction of this court to entertain the bill and to make a decree which will bind all the parties to the suit. *Chase* v. *Chase*, 2 Allen, 101. *Martinius* v. *Helmuth*, Coop. 245.

The interpretation and effect of the clauses in the marriage contract, by which the parties declare their intention to marry under the *regime dotal*, and the delivery of the principal fund is made conditional upon the husband's giving " a sufficient mortgage or other equivalent guaranty," depend upon the foreign law, of which this court has no judicial knowledge except from the evidence in the cause. *Talbot* v. *Seeman*, 1 Cranch, 38. *Di Sora* v. *Phillipps*, 10 H. L. Cas. 624. *Knapp* v. *Abell*, 10 Allen, 488. The only evidence which has been submitted is the testimony of competent foreign jurists, who are clearly of opinion that by the law of Geneva, of France, and of Austria, the effect of the contract is to secure the investment of the wife's dowry in

a peculiar manner for her benefit, to hold the husband to his legal responsibility for it to her and her heirs, and to make it inalienable during the marriage, even with the concurrence of both husband and wife, except to endow her children, or by leave of court for special purposes; that the income may be received by the husband so long as they live together, and by the wife in case of legal separation, and the wife may dispose of the principal by will, as if unmarried, within the limits allowed by the law of her domicil, or after his death by deed; and that an unconditional payment of the principal sum to the wife, or without due security for its proper investment according to the marriage contract, will not discharge Mr. Childe's executors or representatives from responsibility, notwithstanding the husband's release, the decree of divorce, and the fact that by the Austrian law generally a married woman has power to dispose of her own property. The decree of divorce is from bed and board only, and permits and indeed advises the parties to come together again. To order the fund to be paid unconditionally to the wife would be in direct opposition to the terms, as well as the effect, of the marriage contract, and, in case the parties should hereafter live together, would expose the property to all the risks which the contract was carefully framed to guard against. The fund cannot therefore be ordered to be paid to the wife, but must be held in trust by the plaintiffs or their successors, for her benefit, and the annual income paid to her until the court shall otherwise order, with liberty to apply for further directions, in case of the death of herself or her husband, or other change of circumstances. Her right to dispose of the fund by will or otherwise cannot properly be passed upon by the court now, in anticipation of any actual question, and without the opportunity of hearing all parties interested. *Otis* v. *Coffin*, 7 Gray, 514. *Cross* v. *De Valle*, 1 Wallace, 15.

The question remains, What amount of money is to be set apart as constituting this fund? As the court does not order the fund to be paid to Countess Soltyk absolutely, the agreement made between her and her brother, one of the plaintiffs, as to the sum at which it should be estimated in that event, does not apply.

The testator's domicil was here; his estate is to be settled here; and there is no direction in the will that the sum shall be paid in any other country. It is therefore to be paid here, and no question of exchange or expense of remittance arises. The amount to be set apart is such a sum in money of the United States as will produce one hundred and fifty thousand francs in Boston. *Cockerell* v. *Barber,* 16 Ves. 461. *Campbell* v. *Graham,* 1 Russ. & Myl. 461. *Otis* v. *Coffin,* 7 Gray, 513. Story Confl. Laws, § 313. In *Stewart* v. *Chambers,* 2 Sandf. Ch. 382, cited at the bar, the will expressly directed the legacy to be paid in a foreign country. See also *Blanchard* v. *Equitable Safety Insurance Co.* 12 Allen, 390.

The more difficult question is, By what rule is the amount of dollars to be ascertained, in the present state of the currency of this country? This question is not affected by the decision in *Otis* v. *Coffin,* 7 Gray, 511, for two reasons; because in 1856, when that case was decided, as well as in 1839, when Admiral Coffin made his will and died, there was no lawful tender for the payment of debts here, except gold and silver coin; and because English and French coins were then current here by law as money. U. S. Sts. 1843, *c.* 69; 1834, *c.* 96; 5 U. S. Sts. at Large, 607; 4 Ib. 700. But now no foreign money is a lawful tender in the United States, although the value of French, English, and some other foreign coins for certain mercantile purposes is regulated by law in the absence of agreement. U. S. St. 1857, *c.* 56; 11 U. S. Sts. at Large, 163. *Commonwealth* v. *Haupt,* 10 Allen, 43, 47. *Stanwood* v. *Flagg,* 98 Mass. 124. According to recent decisions of this court, even coined money of the United States may under some circumstances be estimated, in making up a judgment, at its market value in treasury notes of the United States. *Sears* v. *Dewing,* 14 Allen, 413, *Cushing* v. *Wells, Fargo & Co.* 98 Mass. 550. This is not a case of compelling performance of a mere contract for the payment of a sum of money, but of ascertaining and carrying out the intention of a testator as to the distribution of his estate between his children — less a case of debt than of trust. French francs are money in France and Switzerland; they are but a

commodity here. The testator in effect directs so much money to be taken out of his estate as will purchase one hundred and fifty thousand francs delivered in Boston. If the francs are purchased with gold coin, it will require a smaller sum ; if with treasury notes, a greater sum. To estimate the sum to be set apart in gold, and then allow it to be set apart in paper, nominally equivalent, but commercially of inferior value, and which would not in fact produce the required amount of francs here, would defeat the manifest intention, if not the express words, of the will. The court is therefore of opinion that the amount to be invested here for the benefit of Countess Soltyk is such an amount in treasury notes of the United States as will purchase in Boston the sum of one hundred and fifty thousand francs delivered here.

The costs of all parties in ·this suit, properly brought to clear up an ambiguity in the language of the will, and to enable the plaintiffs to execute their trust, must, like the ordinary expenses of administration, be borne by the residuary assets. *Sawyer* v. *Baldwin,* 20 Pick. 388, 389, and cases cited. *Rogers* v. *Ross,* 4 Johns. Ch. 608. 2 Dan. Ch. Pract. (3d Am. ed.) 1503, 1506.

*Decree accordingly.*

*S. Bartlett,* for the plaintiffs.
*W. Minot, Jr., & F. V. Balch,* for Countess Soltyk.