NELSON S. BARTLETT & others, executors & trustees,
petitioners.

Suffolk.   March 11, 1895. — May 24, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Devise and Legacy — Perpetuity —Valid Public Charities — Trust for Sale of
Real Estate — Promissory Notes — Gift — Photographic Copy of Will —
Payment of and Interest upon Legacies — Payment of Expenses of Admin-
istration and of Contest over Probate of a Will.*

A provision in a will giving an estate to trustees in trust to be conveyed in fee
simple to A. and his descendants, together with the income of a fund also given
in trust, the income to be used by A., his heirs and assigns, exclusively for the
purpose of keeping the estate as well as the testator's cemetery lot and monu-
ment always in repair, creates, so far as it is intended for the purpose of keeping
the estate in repair a private perpetual trust, and the estate, having been con-
veyed to A., becomes absolutely his property, and the fund also becomes abso-
lutely his property so far as it is intended to be used in keeping the estate in
repair ; but the trust to keep the burial lot and monument always in repair is
a good perpetual trust under our statutes, and, it being conceded that a certain
sum is sufficient for the purpose, the trustees should retain in their hands that
sum, or deposit it with the treasurer of the city, the income thereof to be used
to keep the burial lot and monument always in good order.

A devise of real estate to trustees to be cut up into "smaller lots and sold for
pleasant homes," and of two wharves to be sold or to be let to the persons who
should build on the lots, does not create a charitable trust, but merely a trust for
sale of real estate.

A devise of " The Chapel lot . . . to be retained and used when the growth of the
village population will justify the building of a larger and more pretentious
Village Chapel," and bequest of a sum of money for the purpose ultimately of
erecting upon the Chapel lot a.chapel to be used by the inhabitants of the village
for religious meetings and a Sunday School, are good public charitable gifts.

A gift of real and personal property for a public park is a good public charitable
gift.

A testator by his will gave in trust the sum of one hundred and twenty thousand
dollars, including a note of twenty thousand dollars held on demand, the income
"to be paid semi-annually to the Board of Trustees of the Gloucester Lyceum,
and Sawyer Free Library as part of the endowment fund for its support." About
five years before the execution of the will the testator delivered to the treasurer
of the Lyceum and Library, a corporation, a promissory note for twenty thou-
sand dollars, signed by him and payable on demand to the order of the Board of
Trustees of the corporation with interest, which interest was paid by him to the
time of his death.   *Held,* that the note, being signed by the testator, could not
be the subject of a gift ; that it was simply a written promise, without consid-
eration, and could not be enforced against his estate ; that the language of the
will showed that the bequest was of the sum of $120,000, of which the promise

contained in the note should be a part; that the note should be cancelled; and that the bequest of $120,000 was a good public charitable bequest.

A bequest " of Forty Thousand Dollars, in trust, including the notes of Two Thousand Dollars, already given," the income to be paid " to the Treasurer of the Female Charitable Association of Gloucester, . . . to be devoted to the charitable and benevolent objects for which this society has so long and so cheerfully labored, relieving the destitute and comforting the sick," is a good public charitable bequest of forty thousand dollars; and the notes signed by the testator cannot be the subject of a gift, and, being simply written promises, without consideration, cannot be enforced against his estate, and must be cancelled.

A bequest to the government of a city of money in trust to be called the " S. Drawing and Music Fund, and the income only to be used to assist in defraying the expenses of competent teachers in these two departments of our Public Schools under the direction of the School Committee," and if either or both should be discontinued " the income shall then be used to establish a branch or Nautical School, to teach young mariners the art or science of Navigation," is a good public charitable bequest.

A bequest to the government of a city of money in trust, the income to be applied by the School Committee in providing medals for meritorious scholars in the High and Grammar Schools, and to be used in setting out ornamental trees on the waysides, or within the school-house grounds or other public places, is a good public charitable bequest.

A bequest of money to the Trustees or the Treasurer of a Public Library in trust to be called the " S. Fund," the income to be used for books, is a good public charitable bequest.

Bequests of money to the Parish Committee and the Treasurer of the First Parish Unitarian Society of a city in trust, the first to be called " Parsonage Fund," the income to " be allowed to accumulate until such time as the said officers and the members of said Society shall deem it best, to provide a parsonage Home for their minister," the second to be called the " Salary Fund, the income only to be used in paying the minister's salary," the third without any particular name, " the income only to be used in purchasing Sabbath School books," and the fourth to be called the " Girls Industrial School Fund," the income " to be paid to the chief manager of said School." are all good public charitable bequests.

A bequest of money in trust, " the income only to be paid semi-annually to my nephew A. and his heirs," is an attempt to create a private perpetual trust, and the money is to be paid to A. absolutely.

The provisions of the paragraphs in the will which have been numbered for convenience from fifty to fifty-two, directing, among other things, the payment of the average annual income in the place of interest to certain institutions, relate only to those institutions mentioned in the forty-eighth and forty-ninth paragraphs, that conclusion being justified by the phraseology of the will and by the aid derived from the examination of a photographic copy of it.

A provision in a will which extends the time of payment of legacies to certain institutions, and which was intended to affect only the convenient and most profitable management of the estate, does not take the legacies generally out of the operation of the rule that legacies draw interest at the rate of six per cent per annum from one year from the death of the testator.

A bequest in trust, within Pub. Sts. c. 136, §§ 24, 25, which provide that the income shall be payable from the death of the testator, and shall be apportioned in case of the death of the life tenant, draws interest at the rate of six per cent per an-

num, simple interest, from the death of the testator; and the life tenant having died after the testator, there being no provision as to the termination of the trust, the interest up to the time of his death is payable to his estate, and the principal fund belongs to the residue of the testator's estate.

A testator provided by his will that, if at his decease his property should be depressed in value, the executors were to defer the payment of legacies to certain institutions "until such time as in their good judgment it would seem best to dispose of as much of said properties as would be required to pay these legacies in full, not exceeding five years," and directed that the average annual income from his property "shall be considered, if less, an equitable sum to be divided and paid" to the institutions. *Held*, that interest on the amounts given from one year from the death of the testator for the next four years was to be reckoned at the rate of the average annual income received from the property if less than six per cent, and after the expiration of five years from the death of the testator at the rate of six per cent, simple interest, per annum.

The expenses of administration, including the expenses of the contest over the probate of a will, so far as they are made a charge upon the estate, are to be taken from the corpus thereof.

PETITION, by the executors and trustees under the will of Samuel E. Sawyer, to obtain the instructions of the court as to the construction of the will. The case was heard by *Lathrop*, J., and reported for the consideration of the full court. The facts appear in the opinion.

*E. T. Burley*, for the petitioners, read the papers in the case.

*W. G. Russell*, for Massachusetts Society for Prevention of Cruelty to Animals, and forty-nine other charitable corporations.

*S. Lincoln*, for the Trustees of Gloucester Lyceum and Sawyer Free Library.

*A. Hemenway & C. B. Barnes, Jr.*, for Frederic H. Sawyer and others.

*C. A. Russell*, for the Attorney General and City of Gloucester.

*G. Cunningham*, for the Female Charitable Association of Gloucester.

*S. D. York*, for the Town of Rockport and Trustees of Rockport Public Library, submitted the case on a brief.

*H. F. Hurlburt & E. T. McCarthy*, for the First Parish Unitarian Society, also submitted the case on a brief.

*J. J. Flaherty*, for Lillie M. Sawyer, executrix.

FIELD, C. J. It is convenient to consider the questions in the order in which they arise in the will itself, using for convenience the numbering of the paragraphs made by the petitioners. In the first paragraph the testator gives the burial lot to his execu-

tors and trustees "who will also have charge of the Homestead Fund, the income of which in part, shall be used to keep the lot and the monument always in good order," etc. This Homestead Fund appears by the fourth paragraph to be a sum of $12,000, given to the executors and trustees "to be securely invested in first mortgages on real estate at about fifty per cent of a fair valuation, Government, State, City or Town bonds, or any other substantial securities, undoubted, and the income thereof only to be paid over to Captain Charles Abram Sawyer, my nephew, his heirs and assigns, semi-annually January and July if practicable. It being intended that the income of this legacy shall be exclusively used for the purpose of keeping the old Homestead and the other buildings, always in good repairs and the grounds in good order and condition as well as the Cemetery Lot as before mentioned. The buildings to be kept constantly insured."

By the fifth paragraph the Brookbank estate is given to the executors and trustees in trust, "to be conveyed in fee simple to my nephew Capt. Charles A. Sawyer of Gloucester, and his descendants, together with the income of 'Homestead Fund,' which is to be used exclusively for the purpose as before stated, it being my earnest desire and request that the Old Sawyer Homestead, which has been in our family one hundred and seventy-five years, with all the land now belonging to it, in one lot, shall be kept in good repair as before requested, and thus be handed down from generation to generation unincumbered by lien or mortgage as a precious heirloom of the Sawyer Family." The Brookbank estate, which we understand to be the Homestead estate, has been conveyed by said executors and trustees to Charles A. Sawyer in his lifetime. He has since deceased, and the executrix of his will is a party to these proceedings. It is obvious that this trust of $12,000, so far as it is intended for the purpose of keeping the Old Homestead always in good repair, cannot be carried into effect. It is an attempt to create a private perpetual trust. The Homestead estate, having been conveyed to Charles A. Sawyer, his heirs and assigns, became absolutely his property, and the $12,000, the income of which was to be paid to him, his heirs and assigns, also, we think, became absolutely his property, so far as it is a sum intended to be

used in keeping in good repair the Old Homestead. *Smith* v. *Harrington*, 4 Allen, 566. *Harlow* v. *Cowdrey*, 109 Mass. 183. *Bent* v. *Cullen*, L. R. 6 Ch. 235. The only question that requires consideration is whether so much of this $12,000 as is necessary to keep the burial lot and the monument always in good order can be separated from the remainder and sustained as a perpetual trust. We think that a trust to keep the burial lot and the monument of the testator always in good order is under our statutes a good perpetual trust, and that, as it is conceded that $500 is sufficient for the purpose, the executors should retain in their own hands $500, or deposit this sum with the treasurer of the city of Gloucester, the income of which should be used to keep the burial lot and monument always in good order; the remainder of this legacy of $12,000 should be paid to the executrix of the will of Charles A. Sawyer. *Green* v. *Hogan*, 153 Mass. 462. *Sears* v. *Hardy*, 120 Mass. 524.

Of the real estate given to the executors and trustees by the sixth paragraph, some is plainly intended to be cut up into " smaller lots and sold for pleasant homes," and the Large Stone Wharf and the old Webber Wharf seem to be intended to be sold or to be let to the persons who shall build on the lots first mentioned. As to this real estate there is no charitable trust ; it is merely a trust for sale. The Chapel lot is a vacant lot in that part of the city of Gloucester called Cove Village. The language of the will is : " The Chapel lot, having a frontage of about seventy feet on Western Avenue, is to be retained and used when the growth of the village population will justify the building of a larger and more pretentious Village Chapel."

The nineteenth paragraph of the will is as follows : " I give and bequeath to my Executors and Trustees, the sum of Four Thousand Dollars, in trust, to be safely invested as aforesaid and the *the* income be allowed to accumulate until such time, when it would seem to be advisable to erect a more commodious Village Chapel in Fresh Water Cove, a portion of the income may be used in purchasing Sabbath School Books ; to keep the building and the grounds in good order, and for its general support." We understand that Fresh Water Cove is the cove on which is situated Cove Village, in which is the Chapel Lot, and that it appears that in this village, although not on the Chapel Lot,

there was at the date of the will, and still is, a school-house sometimes used by the inhabitants of the village for religious meetings and a Sunday School.   We think it evident that the testator intended to give this Chapel Lot and this four thousand dollars for the purpose ultimately of erecting upon the Chapel Lot a chapel to be used by the inhabitants of Cove Village for religious meetings and a Sunday School.   This, we think, is a good public charitable gift.   *McAlister* v. *Burgess*, 161 Mass. 269.   *Fairbanks* v. *Lamson*, 99 Mass. 533.   *Tainter* v. *Clark*, 5 Allen, 66.

The seventh paragraph of the will is as follows : " None of the numerous Wood Lots now owned by me, or hereafter purchased, are to be sold, or in any way disposed of, but to be retained by my Executors and Trustees for the protection and beauty of the Cove Village, now so called but sometime in the near future, to be laid out handsomely with driveways and pleasant rural walks, and then dedicated in the name of ' Ravenswood Park,'· and then I hope the village will also be called ' Ravenswood.' "

The fifteenth paragraph is as follows: " I give and bequeath to my executors and trustees the survivors and survivor of them and their successors in the office the sum of Sixty Thousand Dollars in trust, to be safely invested as heretofore directed, and the income only to be used in developing and beautifying the present ' Ravenswood Park' grounds by clearing away the dead wood and other incumbrances, and for the purchasing of other contiguous wood-lands, that may be essential in perfecting its present form and completion."   These wood lots are all within the limits of the city of Gloucester.   A gift of real and personal property for a public park is, we think, a good public charitable gift.   *Attorney General* v. *Abbott*, 154 Mass. 323.   Pub. Sts. c. 116, §§ 35, 36.   St. 1882, c. 154.

The first clause of the thirteenth paragraph is as follows:  " I give and bequeath to my Executors and Trustees, the survivors and survivor of them and their successors in the office, to be held by them in trust, the sum of One Hundred and twenty Thousand Dollars including the note of Twenty Thousand Dollars, now held by them on demand, to be safely invested, as heretofore directed, and the income only of said sum, to be paid semi-annually to the Board of Trustees of the Gloucester Lyceum

and Sawyer Free Library as part of the endowment fund for its support." It appears that on July 1, 1884, "said testator executed and delivered to the Treasurer of the Gloucester Lyceum and Sawyer Free Library, a corporation, a promissory note signed by the said testator, payable on demand to the order of the Board of Trustees of said corporation and their successors in office for $20,000, with interest at the rate of six per cent per annum, payable semi-annually, and being the same note referred to in paragraph 13 of said will. The interest was regularly paid by the testator on said note down to the time of his death. Said corporation claims said note was delivered by the testator as a gift *inter vivos*. There never was any consideration for said note, and the same is still held by said Treasurer, who, in behalf of said Board of Trustees and said corporation, claims interest thereon according to the terms of said note." The note, being a note signed by the testator, could not be the subject of a gift. *Parish* v. *Stone*, 14 Pick. 198. It was simply a written promise of the testator, without consideration, and could not be enforced against his estate. The language of the thirteenth paragraph shows that the testator did not intend to give to his executors and trustees in trust $120,000 in addition to the amount of money promised in the note, but $120,000 of which the promise of $20,000 contained in the note should be a part. This bequest is of the sum of $120,000, and the note should be cancelled. This is a good public charitable bequest.

The first clause of the fourteenth paragraph of the will is as follows: " I give and bequeath to my Executors and Trustees, the survivors and survivor of them and their successors in the office, the sum of Forty Thousand Dollars, in trust, including the notes of Two Thousand Dollars, already given, to be safely invested as heretofore directed, and the income only to be paid semi-annually to the Treasurer of the Female Charitable Association of Gloucester, (which at present occupy rooms set apart in the Library Building,) to be devoted to the charitable and benevolent objects, for which this society has so long and so cheerfully labored, relieving the destitute and comforting the sick." We understand that the facts concerning this paragraph are similar to those considered under the thirteenth paragraph, and the construction should be the same.

We do not understand that it is seriously contended that the bequests in the sixteenth, seventeenth, eighteenth, twentieth, twenty-first, twenty-second, twenty-third, and twenty-fourth paragraphs are not valid bequests. These bequests are as follows:

16. " I give and bequeath to the Government of the City of Gloucester, the sum of Ten Thousand Dollars, in trust, to be securely invested, and to be called the ' Sawyer Drawing and Music Fund,' and the income only to be used to assist in defraying the expense of competent teachers in these two departments of our Public Schools under the direction of the School Committee. If either or both of these branches at any time should be discontinued, I desire that the income shall then be used to establish a branch or Nautical School, to teach young mariners the art or science of Navigation.

17. " I also give and bequeath to the said City Government the sum of Three Thousand Dollars in trust, to be invested as aforesaid and the income only to be applied through the hands of the School Committee, in providing medals, to be awarded to meritorious scholars in the High and Grammar Schools, — Courtesy and exemplary conduct to be considered; If the income should be more than sufficient, I desire that the balance shall be used for the purpose of setting out Ornamental Trees on the way-sides, or within the School House grounds or other public places, thus beautifying and adding attractions to my native town.

18. " I give to the City Government in addition to the above legacy One Thousand Dollars to be invested as aforesaid in trust to be called the ' Ornamental Tree Fund,' the income only to be used in setting out trees by the way-side. . . .

20. " I give and bequeath to the Trustees or the Treasurer of the Rockport Public Library the sum of Four Thousand Dollars in trust, to be safely invested and called the ' Sawyer Fund,' the income only to be used for Books.

21. " I give and bequeath to the Parish Committee and the Treasurer of the First Parish Unitarian Society of said Gloucester, the sum of Eight Thousand Dollars in trust to be called ' Parsonage Fund,' to be safely invested, and the income be allowed to accumulate until such time, as the said officers, and the members of said Society shall deem it best, to provide a parsonage Home for their minister.

22. " I also give to the officers of the above named Society an additional sum of Three Thousand Dollars in trust to be safely invested and called the ' Salary Fund,' the income only to be used in paying the minister's salary.

23. " I also give to said Society in trust, as afores^d One Thousand Dollars, the income only to be used in purchasing Sabbath School Books.

24. " I give to the same Committee and Treasurer of the First Parish Unitarian Society the further sum of Two Thousand Dollars, in trust, to be safely invested and called the ' Girls Industrial School Fund,' and the income only to be paid to the chief manager of said School."

These legatees, so far as appears, have the lawful power to take the money for the purposes indicated, and the purposes of the several trusts seem to be charitable.

The twenty-fifth paragraph is as follows : " I give and bequeath to my Executors and Trustees in trust, the survivors and survivor of them and their successors in the office, the sum of Eight Thousand Dollars to be safely invested as before directed, and the income only to be paid semi-annually to my nephew Capt. Charles Abram Sawyer and his heirs." This legacy should be paid absolutely to the executrix of the will of Charles Abram Sawyer, for the reasons we have hereinbefore given.

The twenty-sixth paragraph is as follows : " I also give and bequeath to my Executors and Trustees, in trust, the sum of Nine Thousand Dollars, to be invested as aforesaid, and the income only to be paid over to my two other nephews and niece, — namely, Saml. I. Sawyer, Frederic H. Sawyer and Mrs. Agnes H. Coffin, and their heirs in equal proportions, semi-annually." This legacy should be paid absolutely in equal shares to Samuel I. Sawyer, Frederic H. Sawyer, and Mrs. Agnes H. Coffin.

The forty-eighth paragraph of the will is as follows : " I give and bequeath to each of the ten following named Institutions and Societies, the sum of Four Thousand Dollars to be safely invested as a 'Permanent Fund,' and the income only thereof to be used in such manner as will from time to time best promote the interests and welfare of the said Institutions and Societies," and then follow the names of ten different societies or institutions.

The forty-ninth paragraph of the will is as follows : " I give and bequeath to each of the Forty following named Institutions and Societies the sum of Two Thousand Dollars, to be safely invested as a ' Permanent Fund ' and the income only to be used in such manner as will best promote the interest and prosperity of the said Institutions and Societies," and then follow the names of forty different societies or institutions.

The fiftieth, fifty-first, and fifty-second paragraphs of the will are as follows :

" If any of the above named Institutions and Societies, should cease to exist or should cease to perform the duties, offices and charities for which they were created, originally, I then authorize and request my Executors and Trustees to devote such legacy, or income to the use of any other kindred society, so that the same beneficent objects shall be accomplished.

" If at my decease my Stocks, Bonds, Real Estate or other property, should be depressed in value I hereby authorize and request my Executors and Trustees to defer the payment of these legacies, until such time as in their good judgment it would seem best to dispose of as much of said properties as would be required to pay these legacies in full, not exceeding five years.

" I also desire and request that the average annual income received from my property shall be considered, if less, an equitable sum to be divided and paid to the several Institutions and Societies, which shall only be paid semi-annually, say in January and July of each year, thus making the payments most convenient : — and I would further suggest that a worthy competent person, male or female, who writes a good hand, shall be employed from time to time to keep a book of accounts, showing the separate amounts received from each investment and giving also the separate amts. paid out, and to whom paid.

" In case I should in my lifetime anticipate any of the above named legacies, by gift to any one of said Institutions or Societies, my will is that such gift shall be taken and considered a payment of the legacy herein given."

We have had before us a photographic copy of the will. The paragraphs are not numbered in the will. The paragraph numbered 49 in the printed will seems to be a new paragraph ; it is however in the will separated from the paragraph numbered 48

by only slight indications. The will was written by the testator on paper which has a ruled margin on the left hand side, and it is carefully written within this margin. The first word of the first line of paragraph numbered 49 is written in the will about three eighths of an inch inside of this margin, while the other lines of this paragraph begin close up to the margin, but the space between the first line of paragraph numbered 49 and the preceding line is the same as between other lines, and the preceding line extends substantially across the page. The form of writing paragraph numbered 50 has in the written will nothing to indicate that it was intended as a separate paragraph. The preceding line extends across the page; the initial "If" of the paragraph is close to the margin, and the space between the first line of the paragraph and the preceding line is the same as the usual spaces between lines. The paragraph numbered 51 has the appearance in the written will of being intended for a new paragraph, for although between the first line of the paragraph and the line preceding is the usual space, yet the preceding line does not extend quite across the page and the "If" at the beginning of the next line is about one quarter of an inch from the margin. The second clause of paragraph numbered 51 begins about a quarter of an inch from the margin, but this is the only indication that it is a new paragraph, and there is a comma and not a period after the word "years" next preceding, but the testator often used a comma at the end of a sentence for a period. The only thing to be said from an examination of the photographic copy is that the paragraphs are not numbered, and in form are far less distinctly separated from one another than they appear to be in the printed copy. The question is whether the provisions of the paragraphs numbered from 50 to 52 relate to all legacies to or for the benefit of institutions and societies contained in the will, or only to those institutions and societies mentioned in the 48th and 49th paragraphs, or only to those mentioned in the 49th paragraph. This is a question of a good deal of difficulty, but we think that they relate to the institutions and societies mentioned in both the 48th and 49th paragraphs, and to no other.

The testator died on December 15, 1889. The will was allowed by the Probate Court of the county of Essex, by decree entered on January 20, 1890; and an appeal was taken from this decree

and heard in this court, which resulted in the affirmance of the decree of the Probate Court on February 6, 1893. More than five years have now elapsed since the death of the testator. The words " the above named Institutions and Societies," found in the 50th paragraph, and the words " the several Institutions and Societies," found in the 51st paragraph, and the words " any one of said Institutions or Societies," found in the 52d paragraph of the will, seem to refer to the institutions and societies to which legacies were to be paid, and not to those for whose benefit property was to be held in trust by the executors and trustees. Before these paragraphs the testator had given certain property or sums of money to his executors and trustees, in trust, for the benefit of certain societies, and certain property or sums of money to certain societies, and certain sums of money to the Government of the City of Gloucester; but all these legacies either were given for special purposes set forth in the will, or the gift was to his executors and trustees with special directions. In the 48th paragraph he gives to " each of the ten following named Institutions and Societies, the sum of Four Thousand Dollars, to be safely invested as a ' Permanent Fund,' and the income only thereof to be used in such manner as will from time to time best promote the interests and welfare of the said Institutions and Societies," and the same language substantially is used at the beginning of the 49th paragraph. These legacies are to be paid directly to the institutions and societies named, and the income is to be used by them at their discretion to promote their interests and welfare or their interest and prosperity. Immediately after this he makes provision for the event of " any of the above named Institutions and Societies " ceasing to exist, and then makes a provision in a certain event for deferring " the payment of these legacies " until such time as in the judgment of his executors and trustees it would seem best to dispose of so much of his property " as would be required to pay these legacies in full, not exceeding five years," which must mean five years from the time of his decease; and then he makes provision that the " average annual income received from my property shall be considered, if less, an equitable sum to be divided and paid to the several Institutions and Societies," etc., and this we think he means shall be done until the legacies are paid in full.

The fifty-third paragraph, which is the residuary clause, begins as follows: " After the payment of my just debts and all the legacies herein written, and after providing for the several bequests in trust, I hereby give," etc. This shows that the testator distinguished between the legacies given to his executors and trustees in trust and the legacies which were to be paid to the legatees, and that he used apt language when he intended to include all the legacies given by the will. The language of the paragraphs numbered from 50 to 52 seems to us specifically to refer to the institutions and societies named in the preceding paragraph or paragraphs which have been numbered 48 and 49.

The general rule is that legacies draw interest at the rate of six per cent per annum from one year from the death of the testator. We see nothing in the will whereby the legacies generally are taken out of the operation of this rule. The provision extending the time of payment of the legacies to certain institutions and societies, we think, was intended to affect only the convenient and most profitable management of the estate, and not the time from which interest should be reckoned. *Welch* v. *Adams*, 152 Mass. 74. *Spencer, petitioner*, 16 R. I. 25. *Wood* v. *Penoyre*, 13 Ves. 325. As we have construed this provision it requires the payment of the average annual income in place of interest to such institutions and societies.

The bequest in the 41st paragraph, in trust for the benefit of William Wynn, seems to be within Pub. Sts. c. 136, §§ 24, 25, and this bequest draws interest at the rate of six per cent per annum, simple interest, from the death of the testator.* Wynn having since died, the interest up to the time of his death is payable to his estate; the principal of this trust fund belongs to the residue of the testator's estate. The other legacies, except those contained in the 48th and 49th paragraphs, draw interest at the rate of six per cent per annum, simple interest, from one year from the death of the testator. The legacies contained in the 48th and 49th paragraphs are subject to the provisions contained in the 51st paragraph. Under these provisions interest on the amounts

---

* The bequest was of " the sum of Four Thousand Dollars, to be safely invested, and the income only paid over semi-annually to my Coachman William Wynn of Gloucester."

given from one year from the death of the testator for the next four years is to be reckoned at the rate of the average annual income received from the property, if less than six per cent, and after the expiration of five years from the death of the testator at the rate of six per cent, simple interest, per annum. If any of the devises or legacies fail or lapse, they fall into the residue and pass under the residuary clause. The expenses of administration, including the expenses of the contest over the probate of the will, so far as they have been made a charge upon the estate, are to be taken from the corpus of the estate. *Bowditch* v. *Soltyk,* 99 Mass. 136. *Deane* v. *Home for Aged Colored Women,* 111 Mass. 132. *Morse* v. *Stearns,* 131 Mass. 389. *Bridge* v. *Bridge,* 146 Mass. 373.

*Instructions accordingly.*

