(57 Misc. Rep. 275.)

### In re WALDRON et al.

(Surrogate's Court, Saratoga County. December, 1907.)

1. CEMETERIES—ESTABLISHMENT BY VILLAGE—LEGACIES TO SUPPORT.

A village charter authorized it to purchase and hold real estate for a cemetery, to sell lots, and to keep a hearse and other conveyances for burial, and to convey the cemetery lands to an incorporated cemetery association, and provided for the care by such association of any lots in the cemetery, and authorized the village to take legacies to carry out such purposes. *Held* to authorize the corporation to take legacies only for the care of the lots and property of the municipality, and not for the perpetual care of private lots.

2. SAME—CARE OF PRIVATE LOTS—PERPETUITIES.

Village Law, Laws 1897, p. 447, c. 414, § 295, authorizing the board of cemetery commissioners to hold property in trust to apply the income to the improvement of a cemetery or the erection or preservation of buildings and walks therein, or the erection and preservation of tombs and other structures around any lot or otherwise caring for and maintaining such lots, applies to private lots in cemeteries, but is limited by Personal Property Law, § 2, providing for the duration of time that the absolute ownership of personal property may be suspended, and by the laws relative to the construction of trusts.

3. CHARITIES—CHARITABLE BEQUEST—PERPETUITIES.

A bequest in trust to invest and reinvest the principal, and expend the income in keeping testator's cemetery lot and monument thereon in good repair, is not a gift to a religious, educational, charitable, or benevolent use within Laws 1893, p. 1748, c. 701, and is invalid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 39.]

In the matter of the settlement of the accounts of Cornelius A. Waldron and William H. Connerty, executors of Isaac Bedell. Decree rendered.

OSTRANDER, S. The executors upon the settlement of their account ask the direction of the court concerning the construction and payment of a certain legacy provided in the will of said deceased. The will of Isaac Bedell, late a resident of Waterford, was proved and recorded as a will of real and personal property in the Surrogate's Court of Saratoga county on the 28th day of May, 1906. The second clause of said will provides as follows:

"Second: I given and bequeath unto the village of Waterford, N. Y., the sum of two hundred dollars, in trust, to be invested and reinvested by the trustees of said village and their successors in office, as often as may be necessary and to apply and expend the income therefrom, as often as may be needed, and at least annually, in keeping my lot in the Waterford Rural Cemetery and the stone and monument thereon and such as may be erected thereon, clean and in good order and repair."

Two principal questions arise: (a) Has the village of Waterford capacity to take a legacy for the purpose indicated? (b) Does the second clause of the will in question create a valid trust assuming the capacity of the village to take such a legacy?

By chapter 243, Laws 1859, the several acts relating to the vil-

lage of Waterford were codified in an act of incorporation of said village. Section 35 of that act, as amended by chapter 362, p. 694, Laws 1907, reads as follows:

"Sec. 35. The trustees shall have the custody of the public cemeterics, which now belong or hereafter may belong to said village, and may grant the right of interment therein in separate lots or otherwise. They may purchase and keep a hearse and other conveniences for burial of the dead, and may appoint one or more officers to superintend and have the care of all such property; they may also impose and require the payment of such sums for the privileges of burial, or for burial lots and for officers' fees as they may see fit; they may improve the grounds and purchase and keep in repair the same, including fences, walks, a public vault, hearse and other articles, in proper condition. Such purchases, repairs and improvements shall be paid for out of the receipts and fees authorized by this section, to be kept as a distinct trust fund, and from other moneys specially appropriated for such purpose, at any annual meeting. Such trustees may grant and convey any cemetery owned by the village to any cemetery association incorporated under the membership corporations law, and may provide in the deed of conveyance or by separate contract, for the perpetual care, by such association, of any lot or lots in said cemetery, and provide for paying for such service from the trust fund or appropriation, or both, above mentioned. Said village is authorized to receive and hold legacies made for the purpose of carrying out any of the provisions of this section. The proceeds of all such legacies shall become part of said trust fund and shall be applied by said trustees to the purpose thereof as herein prescribed."

The village of Waterford, being a municipal corporation, has no power to take legacies, except so far as expressly authorized by law. The scheme of this statute seems to be that the village may require payments for privileges of burial, for burial lots and fees of officers, and with such receipts may purchase, care for, and keep up the cemetery, with its fences, walks, public vault, hearse, etc. Such receipts and fees are to be kept as a distinct trust fund; and, in addition thereto, there may be appropriated, at annual village meetings, moneys to assist in making such purchases, repairs, and improvements. And, in addition, the village is authorized to receive legacies for the purpose of carrying out the provisions of section 35. The proceeds of such legacies are to become a part of the trust fund, and are to be applied to the purposes thereof. I think it cannot have been the intention of the Legislature to provide that the moneys received from the sale of lots, burial privileges, and officers' fees should be applied to the maintenance of private lots. It would seem to have been intended that this fund should be for the benefit of the lots owned by the municipality and the public purposes of keeping up walks, fences, public vault, hearse, etc., and that legacies to swell this fund might be taken. These purposes, being public in their nature, would justify the use in their execution of the public funds and of such private funds as might be dedicated thereto. But it will be noted that there is no direction for holding the principal and applying the income to the uses in question, nor any direction to hold legacies as separate trust funds, or otherwise, except as mingled in the general fund. There would be no question as to the lack of power of the village in the premises under this act, except for the provision that the village may transfer the cemetery to some incorporated membership cemetery association, and provide in such conveyance or by contract

for perpetual care by such association of any lot or lots in said ceme-
tery, and provide for paying for such service from the trust fund, or
appropriation or both, and may receive legacies for the purposes of
carrying out the provisions of this section. The Legislature could
not have intended that the village appropriations should be used to
pay for perpetual care of private lots; and it follows that the words,
"any lot or lots in said cemetery," means any lot or lots owned by
the public therein. Any other construction would be a permission
to use public funds for private purposes and unauthorized. The sec-
tion does not in terms authorize the taking of legacies by the village
for any purpose except those for which the general trust fund and
appropriations may be used, or the holding of separate trust funds
for separate lots, as distinguished from receiving a legacy absolute-
ly to mingle with its general funds, and I conclude that the village
is not empowered to take the legacy in question, under the act of
incorporation above mentioned. But it is provided by Village Law,
Laws 1897, p. 454, c. 414, § 340, that:

"A village incorporated under and subject to a special law and each officer
thereof, possesses all the powers and is subject to all the liabilities and respon-
sibilities conferred or imposed upon a village incorporated under this chapter,
or upon an officer thereof, not inconsistent with such special law."

### And it is provided by Village Law, § 295, that:

"The board of cemetery commissioners of a village may take and hold any
property given, bequeathed or devised to it in trust, to apply such property
or the income thereof for the improvement or embellishment of such cemetery,
or the erection or preservation of a building, structure, fence or walk therein,
or for the removal, erection, or preservation of a tomb, monument, stone,
fence, railing or other erection or structure on or around any lot therein
or the planting or cultivation of trees, shrubs, flowers or plants in or about
a lot therein or for otherwise caring for and maintaining a lot therein ac-
cording to the terms of such grant, devise or bequest."

This act is broad enough to apply to private lots in such cemeteries,
and is not inconsistent with the Waterford charter, and is therefore
operative; but it does not in terms permit or refer to a trust for per-
petual care, and I think it empowers such cemetery commissioners to
take only in so far as the terms of the several trusts are consistent
with other existing provisions of law relative to trusts, and is limited
by the statutes providing for the duration of time that titles to prop-
erty may be held in trust and by the law relative to the construction
and validity of trusts; and this leads to a consideration of the question
of the validity of the trust attempted to be created by said second
clause of the will, assuming that the village has power to take any be-
quest of the kind in question. It is provided by Personal Property
Law, Laws 1897, p. 507, c. 417, § 2:

"The absolute ownership of personal property shall not be suspended by
any limitation for a longer period than during the continuance and until the
termination of not more than two lives in being at the date of the instru-
ment containing such limitation or conditions; or if such instrument be a
will, for not more than two lives in being at the death of the testator; in
other respects limitations of future or contingent interests in personal property
are subject to the rules prescribed in relation to future estates in real
property."

The holding sought to be accomplished by the clause in question is not limited to the continuance of any lives in being, and would violate the provisions of the personal property law above quoted, and be void as creating a perpetuity, unless it be saved either by the act of the incorporation of the village of Waterford above quoted or by the act of 1893, below mentioned. I have reached the conclusion, as above stated, that the Waterford act was not intended to apply to a legacy of this character, and does not authorize the creation of a perpetuity of this nature.

Chapter 701, p. 1748, Laws 1893, provides as follows:

"Section 1. No gift, grant, bequest or devise to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of this state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder in the instrument creating the same. If in the instrument creating such a gift, grant, bequest or devise there is a trustee named to execute the same, the legal title to the lands or property given, granted, devised or bequeathed for such purposes shall vest in such trustee. If no person be named as trustee then the title to such lands or property shall vest in the Supreme Court.

"Sec. 2. The Supreme Court shall have control over gifts, grants, bequests and devises in all cases provided for by section one of this act. The Attorney General shall represent the beneficiaries in all such cases and it shall be his duty to enforce such trusts by proper proceedings in the court."

We are brought then to the question whether the provision in question is a charitable use. In Perry on Trusts, § 706, the learned author says:

"It has been held quite decidedly that a trust to build a monument, tomb, or vault for the donor is not a charitable use. Mellick v. Asylum, Jacob's Reports, 108; Doe v. Pitcher, 6 Taunton, 359; Hoare v. Osborne, L. R. 1 Eq. 585; Fisk v. Atty. Gen., L. R. 4 Eq. 521; Dawson v. Small, L. R. 18 Eq. 114. In other cases it has been held doubtful whether such trusts are charitable; but it is now settled that a trust to build, maintain, and keep in repair tombs, vaults, and burying-grounds of the donors, their families, or parishes, are so far charitable that they will be carried into effect. Lloyd v. Lloyd, 10 Eng. L. & Eq. 139, 2 Sim (N. S.) 255; Dexter v. Gardner, 7 Allen (Mass.) 247; Swasey v. American Bible Society, 57 Me. 527. As to repairs to private tombs (Bates v. Bates, 134 Mass. 110, 45 Am. Rep. 305, 33 Ch. Div. 187; Piper v. Piper, 72 Me. 155; Hornberger v. Hornberger, 12 Heisk. [Tenn.] 635; Fite v. Beasley, 12 Lea [Tenn.] 328), a bequest of an annual sum for repairs upon a monument has been held good (citing Willis v. Brown, 2 Jur. 987)."

In Lloyd v. Lloyd, 10 Eng. L. & Eq., the Vice Chancellor said:

"I am satisfied that a condition for keeping a tomb in repair is not a charitable use, and is not illegal. It may be illegal to vest property in perpetuity in trust for that purpose, so as to create a perpetuity; but a direction that the wife and Mary Martha Lockley are during their lives to enjoy the annuity, and are to keep the tomb in repair, is quite lawful. It is a valid condition imposed upon the enjoyment."

In Doe v. Pitcher, 3 Maule & S. R. 407, there was a devise of the premises upon condition that the grantee, his heirs and assigns, would at all times thereafter keep in repair the vault and tomb and brickwork and fences thereto belonging, and, if need be, rebuild the vault and tomb, and permit the same to be used as a family vault for

the said Jane and any of her family who might desire to be interred therein. Concerning this provision Lord Ellenborough said:

"It does appear, I think, to be a charitable use in part, and in part not. As far as concerns the grantor's own interment it is not; but, inasmuch as it is for her family, it may be so considered."

In the same case, Doe v. Pitcher, 6 Taunt. 359, Chief Justice Gibbs said (page 369):

"The plaintiff's counsel next insists that the residue of the land is applicable to a charitable use, because the condition is that the donee shall keep in repair a vault to receive the body of the donor or any of her family. We agree with the Court of King's Bench that this is not a charitable use, and the plaintiff's counsel seemed to feel the argument that this was not a charitable use, and therefore tried to argue that this was a quasi charitable use, and that the statute meant to include all provisions tending to perpetuities. It certainly means to provide against perpetuity in limitations of lands for charitable uses, but it is confined to those uses."

In some jurisdictions of the United States it has been held that such bequests were not charitable and in others that they are, depending frequently upon the statutes in force in such jurisdictions. See Bronson v. Strouse, 57 Conn. 147, 17 Atl. 699. A testatrix directed that $1,000 be safely invested, and the income applied to keeping in order her burial lot. It was held that this bequest was valid, such bequest being put on the same ground with public and charitable uses by the general statutes of that state. In Detwiller v. Hartman, 37 N. J. Eq. 347, it was held that:

"A gift of a fund to keep, with the interest, testator's family monument and burial place in repair, not being a charity, is void for perpetuity."

In Bell v. Briggs, 63 N. H. 592, 4 Atl. 702, the testatrix set apart $300, the income thereof to be used in maintaining and keeping in repair the tomb in question. It was held that the executors had power to use the fund in their hands for this purpose; but this decision seems to have been placed upon a statute of the state and upon some supposed necessity of repairing the tomb in the interest of the public health. In Gafney v. Kenison, 64 N. H. 354, 10 Atl. 706, the testator directed his executors to put in some savings bank an ample sum of money the income of which sum always to be sufficient to keep said burial lot in good condition, and enlarge the same if necessary. It was held that the language warranted the investment of a sum for the purpose named, and that the amount necessary should be determined by the court. This was upheld on the authority of Bell v. Briggs, supra, which was supported on the local statute. In Swasey v. American Bible Society, 57 Me. 523, it was held that a bequest of a certain sum to keep in suitable repair the Buck family burying ground, so-called, was valid as a charitable use. This case was decided upon the authority of Lloyd v. Lloyd, supra, which does not hold that a perpetuity may be created for such purpose. In Piper v. Moulton, 72 Me. 155, the testator bequeathed $100 to a town, in trust that the town should expend the income thereof forever to keep his lot in a certain burying ground in good order and condition. It was held that this bequest was not for a charitable use, and was void as creating a perpetuity. The court says:

"It was not for any public purpose beneficial to all, rich or poor. It was not a charitable use for which perpetuity might be created. The court cites Richards v. Robinson, 31 Beavan, 244, where the bequest was to keep up the graves and grave stones of certain persons in good repair, and in that case it was held that the keeping up the tomb or building, which is of no public benefit, is not a charitable use, and the bequest was declared void. The court also cites Hoare v. Osborne, L. R. 1 Eq. 583, where a gift to keep in repair forever the vault in which the testator's mother was interred, was held void, as not being a charity. The court also cited In re Burkitt, 9 L. R. Ch. Div. 576, in which the bequest was to apply the income of a fund, when necessary, in keeping in good repair, the 'railing and tombstones of my late father,' in which case the residue over and the portion of the gift for keeping the grave in repair was held void."

In the Piper Case the court says:

"This is not even to keep in repair the family burying-grounds. It is simply to keep in repair his [my] lot, not the Piper burying ground. It is not for any charitable purpose. It is for a merely secular object. It is not even for all of his family or name, rich or poor. It is not for any general purpose of public interest."

Further citing Tudor's Law of Charitable Trusts, c. 1, § 14:

"The erection of a monument to perpetuate the memory of the donor is not a charitable purpose, nor is the repairing a vault or tomb containing his remains; contra, it seems if the vault to be used be used for the interment of the donor's family." 1 Jarman, Wills (4th Am. Ed.) ——.

The Massachusetts courts have firmly held that the use in question is not a charitable use. In Dexter v. Gardner, 7 Allen (Mass.) 243, it was held that a bequest to a Friends' Meeting Society to and for the uses and purposes of the said people called Quakers, as by the said yearly, quarterly, or monthly meeting may be advised and required, was valid as a charity within the statute for the purposes, including the purchase and repair of burying ground; but this seems to have been put upon the ground that, where a denomination of Christians regard the providing and oversight of burying grounds as a religious duty, accompanying burials of the dead with religious services, the use is charitable as being a part of their religious observance. In Bates v. Bates, 134 Mass. 110, 45 Am. Rep. 305, it was held that a provision in a will establishing a fund for the preservation, adornment, and repair of a private monumental structure creates a perpetuity for a use not charitable, and is void. The court says that, in order that it may be charitable, the use must be of such a character that the general public is to have the advantage of it and not merely individuals. The repairing of a private monumental structure is a matter strictly individual and personal. The fund constituted by the testatrix is to be expended for her own gratification, upon an object in which the public has no interest and which has no proper similitude to a charitable use. Green v. Hogan, 153 Mass. 462, 27 N. E. 413, and Gates v. White, 139 Mass. 353, 1 N. E. 285, are cases arising under statutes of the commonwealth permitting the deposit of funds in certain cases in trust for maintaining cemeteries or cemetery lots, but recognize the doctrine that independent of statute such use is not a charitable one. To the same effect is Bartlett, etc., 163 Mass. 509, 40 N. E. 899. In Morse v. Natick, 176 Mass. 510, 57 N. E. 996, the court says:

"It is settled in this commonwealth that a bequest to provide for the permanent care and beautifying of a burial place and monument is not a public charity, and is void at common law as creating a perpetuity."

In Jones v. Habersham, 107 U. S. 174, 27 L. Ed. 401, it was held that under a statute of Georgia which declared the improvement or repair of burying grounds or tombstones to be proper matter of charity, a bequest for the keeping up of the testator's burial place was a charitable use. In Hopkins v. Grimshaw, 165 U. S. 342, 17 Sup. Ct. 401, 41 L. Ed. 739, it was said, at page 352 of 165 U. S., at page 401 of 17 Sup. Ct. (41 L. Ed. 739), that a grant for the maintenance of a churchyard or burial ground in connection with a church or religious society, or of a public burial ground of all persons of a certain race, class or neighborhood, might be considered as in the nature of a dedication for a pious or charitable use, but that in the case of conveyance for the sole use and benefit of the Union Beneficial Society of the city of Washington for a burial ground and for no other purpose whatever, where the articles of association of that society appear to have contemplated the burial of none but its own members, and the usage, which early sprang up, of permitting the interment in its burial ground of other inhabitants of the District of Columbia, upon the payment of certain fees, appears to have been adopted, not from any charitable motive, but as a source of private profit to the members of the association, it may be doubted whether, in the absence of express statute, the burial ground of such a society can be held to be a public charitable use.

In Jarman on Wills, p. 167, it is said:

"A gift to procure masses for the soul of the testator and others is not charitable; nor is a gift to a convent of nuns whose sole object is the sanctifying their own souls and not performing any external duty of a charitable nature; nor a gift for the erection or repair of a monument, vault, or tomb. whether it be to the memory or for the interment of the donor alone or of himself and his family and relations, unless it forms part of the fabric or ornament of the church."

In Kelly v. Nichols, 17 R. I. 306, 21 Atl. 906, the testator devised his estate to trustees in trust to keep in repair the grave of his sister and himself. Held, that this was not a charitable use.

By chapter 362, p. 920, Laws 1906, it is provided that a person residing in this state may create a trust in perpetuity for the maintenance of a cemetery lot, the preservation of a building, structure, fence or walk therein, the renewal, preservation of a tomb, monument, stone, fence, railing or other erection or structure on or around such lot, etc., by bequeathing property to the county treasurer in the county in which such person resides, or in which such cemetery is located, and designating such county treasurer as trustee. Such act also provides for the administration of such trust. The existence of this statute strongly argues that, independent of statutory enactment, the care and maintenance of a testator's cemetery lot is not such a charitable use that a bequest for that purpose may be upheld. The act in question does not apply to the bequest under consideration, for the reason such bequest was not made to the county treasurer, and, therefore, does not fall within the provision of that act.

From the foregoing authorities it must be held that at common law the use contemplated by this clause of the testator's will is not a charitable one. There is no statute of New York which defines it as a charitable use, and the clause in question must be tested by the rules of law relative to perpetuities and concerning indefinite beneficiaries which prevail where the purpose of the legacy is not charitable, religious, educational or benevolent. In Levy v. Levy, 33 N. Y. 107, it was said:

"If there is a single postulate of the common law, established by an unbroken line of decision, it is that a trust without a certain beneficiary who can claim its enforcement is void, whether good or bad, wise or unwise."

In Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420, it was held that the absence of a defined beneficiary entitled to enforce its execution is as a general rule a fatal objection to the validity of a testamentary trust. To the same effect is Schwartz v. Bruder (Sur.) 3 N. Y. Supp. 134. In the case of Greene v. Greene, 125 N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743, it was held by the Court of Appeals that to the constitution of every express trust there are three elements—a trustee, an estate devised to him, and a beneficiary—and that the trustee and the beneficiary must be distinct personalities. To the same effect, Brown v. Spohr, 180 N. Y. 201, 73 N. E. 14. There is in the case at bar no defined beneficiary, no one who could call the trustee to account, and the attempted trust is void for that reason. The case is very similar to that of Matter of Fisher (Sur.) 8 N. Y. Supp. 10, decided by Surrogate Coffin of Westchester county, in which he held that a direction to the executor to expend $200 as he might deem best, "within the time prescribed by the statute governing perpetuities" in keeping the burial plot of testatrix in good condition, is void, because it contains no limitation based on lives, and also because there is no person beneficially interested in the fund who can compel its employment by the executor in accordance with the intentions of the testatrix.

The trust attempted to be created by the said second clause of the will in question must be held void and of no force, and the moneys so sought to be bequeathed fall into the residuary estate.

Decreed accordingly.