CHARLES GREEN *vs.* DANIEL HOGAN & others.

Hampden.　September 23, 1890. — April 3, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Probate Court — Equity Procedure — Bequest in Trust — Cemetery.*

Until rules of equity procedure are established in the Probate Court, the pleadings and practice should, so far as practicable, conform substantially to the like procedure in the other courts of the Commonwealth; yet in such case, if all the usual forms are not followed, a final decree may be entered in this court on appeal when everything essential has been done properly to present the question involved.

A bequest in trust for the care and keeping of the testator's burial lot in a Roman Catholic cemetery in a certain town, which is neither a public burial place of the town nor a cemetery belonging to a corporation, but is controlled by the resident priest subject to the bishop of the diocese, who owns the fee, is valid under existing statutes, at least as to the amount necessary to accomplish the purpose of the trust.

PETITION to the Probate Court, by the executor of the will of Michael Hogan, for the construction of the will. The record of the Probate Court, transmitted to this court on appeal, consisted only of the petition, the citation, and the notice of appeal. The petition alleged that Michael Hogan died on April 28, 1889, leaving no widow or child surviving him, but as his next of kin, — all of whom were made respondents, — a brother, Daniel Hogan, of Paterson in the State of New Jersey, and nieces, Maria Keefe, Ella Burns, Maggie Ryan, and Terressa Clarrey, all of Westfield in this Commonwealth; that Michael Hogan made a will, naming the petitioner as executor, which

was duly admitted to probate on September 18, 1889; that the assets of the estate, which consisted wholly of real estate, were appraised at $1,250; and that the third and fourth clauses in the will, which alone are material, were as follows:

" Third. I direct my said executor to expend such sum of money as may be necessary to suitably grade and put in good condition my lot in St. Mary's Catholic Cemetery, in said Westfield, and also to place around said lot a good and substantial curbing.

" Fourth. All the rest, residue, and remainder of my estate, real, personal, or mixed, wheresoever situate and however described, I give, devise, and bequeath to said Charles Green and Peter Tierney, of said Westfield, and their heirs, executors, and administrators, to expend the income, and such part of the principal sum thereof as they may deem best, for the care of and keeping in good condition my said lot in said cemetery, the curbing and grounds of the same, and the monument thereon. The said Green and Tierney, their heirs and executors and administrators, to take and receive such compensation for the care of said lot as they may deem reasonable."

The prayer of the petition was for the construction of these clauses, and for instructions respecting the same. The citation provided for notice by publication in a newspaper, and for personal notice " to all persons interested in the will and in the estate of Michael Hogan," and a return thereon, which was sworn to, recited that it had been served as therein required. The judge of probate made a decree that the fourth clause was valid, " judgment upon said third clause having been waived by the petitioner"; and from this decree the respondents appealed.

The case was heard in this court before *Knowlton*, J., who, at the request of the parties, reported the case for the consideration of the full court, in substance as follows.

The testator in his lifetime bought and paid for a lot in St. Mary's Cemetery, which was the only Catholic cemetery in Westfield, subject to the following condition, set out in the instrument of conveyance: " The condition of the above sale being that persons bereft of reason in consequence of drunkenness, having fallen in duel, never having received baptism, or having wilfully departed life without receiving the sacraments, or in

any way opposed to the Catholic Church, shall be debarred from all rights and privileges otherwise conveyed by this instrument." The title to this cemetery was in the bishop of the diocese, and was held by him for the use of the church. The testator during his lifetime was a member of the Catholic church in Westfield, which, together with the cemetery, was under the charge of the resident priest. The cemetery was at all times open to the public, and burial services, as well as exercises of a religious and patriotic character, were occasionally held there by the priest. The moneys received as income from the cemetery formed a common fund with those received from the church, although kept separately on the books of the priest for the sake of convenience. In the consecrated portion of the cemetery, no persons except Catholics could be buried under the rules of the Church; but connected with the cemetery was a parcel of ground not consecrated, in which those not Catholics might be buried. The care and use of cemeteries are regarded by the Catholic Church as sacred obligations. The church through the priest paid for the general care of the cemetery, so that the lots might not become unsightly, or a disfigurement to the cemetery, this care consisting in keeping the lots in order by cutting down the weeds, and other work of like character. The estate of the testator, above debts and charges of administration, amounted to about $1,200. The ordinary care of keeping in order such a lot as that of the testator would not exceed three or four dollars annually.

*G. D. Robinson,* for the executor.

*J. B. Carroll,* for Daniel Hogan and Maria Keefe.

*E. Parsons & A. T. Crossley,* for the other respondents.

FIELD, C. J. This is a proceeding in equity for the construction of a will. *Swasey* v. *Jaques,* 144 Mass. 135. The petition was filed in the Probate Court, and an appeal taken from the decree of that court to the Supreme Judicial Court, where the case was heard by a single justice, and reported to the full court. The rules established for regulating the practice and conducting the business of probate courts pursuant to the Gen. Sts. c. 117, § 19, now the Pub. Sts. c. 156, § 22, apparently do not cover proceedings in equity. See *Baker* v. *Blood,* 128 Mass. 543. We think, however, that until rules are established for such proceed-

ings in the probate courts, the pleadings and practice ought, as nearly as practicable, to conform substantially to the equity procedure in the other courts of the Commonwealth. The persons interested, who ought to be made parties respondent, should be described by name and residence, and a citation or subpœna should be issued addressed to them, or containing their names, which should be served upon them if they are within the Commonwealth and personal service can be made; they should appear and answer, or the bill or petition should be taken for confessed against them, and a decree should be entered according to the forms of decrees in equity. In the present case there are no pleadings except the petition, and no decree except the final decree of the Probate Court; but all the persons who, by the petition, appear to be interested in the question presented apparently resided within the Commonwealth, except Daniel Hogan, and we infer that the citation was served personally on all but Hogan, who resided in New Jersey and to whom a copy was sent by mail, and notice was also published in a newspaper designated in the order of the court. All the persons interested have appealed from the decree of the Probate Court, and we infer that they all appeared before the Probate Court, and before the justice of this court who heard and reported the case, and they all have, by counsel, argued the case in this court. Although all the forms usual in equity proceedings have not been followed, yet we think it appears that everything essential has been done to bring the question presented by the petition properly before this court.

It appears by the decree of the Probate Court, that the question of the validity and construction of the third clause of the will was waived, probably because there was no doubt as to its validity and construction, and that the only question is upon the validity of the fourth or residuary clause. In *Bates* v. *Bates*, 134 Mass. 110, 114, it is said that "it has been repeatedly held that a bequest to provide a fund for the permanent care of a private tomb or burial place could not be treated as a public charity and thus made perpetual, and that such bequest would be void"; and that the Pub. Sts. c. 82, §§ 8, 17, had no application to the case there presented. The Pub. Sts. c. 82, §§ 6–8, relate to cemetery corporations " created by special charter or organized

under the general laws "; and § 17 of the same chapter relates to " a lot in a public burial place of a city or town." See St. 1885, c. 302; St. 1890, c. 264, § 4.

From the facts reported in the present case, it appears that Michael Hogan, the testator, owned rights in a burial lot in St. Mary's Catholic Cemetery, in Westfield, in this Commonwealth, and that the fee of the land was in the Roman Catholic bishop of the diocese; that there was established in Westfield a Roman Catholic church, of which Hogan was a member; and that "the resident priest, subject to the bishop, holds and exercises control over the church and the cemetery." It is plain from the report, that this cemetery is not a public burial place of the town of Westfield, or a cemetery belonging to a corporation. It does not appear when the land in this cemetery was first used and appropriated for the purpose of the burial of the dead, or that permission to use it for this purpose has been obtained from the town of Westfield; but we shall not assume that the land was unlawfully used for this purpose in the absence of any contention of this kind by any of the parties. See St. 1855, c. 257, § 3; Gen. Sts. c. 28, § 5; Pub. Sts. c. 82, § 18; *Meagher* v. *Driscoll*, 99 Mass. 281. It is impossible precisely to determine from the report what rights of burial Michael Hogan acquired in the lot to which he is declared entitled by the written instrument delivered to him, or whether on his death any rights of burial descended to his heirs; but it is clear that no rights of burial were granted to the public, or to any indefinite portion of the public, and it must be taken that this is a private burial lot in a private cemetery.

The St. of 1884, c. 186, authorizes any city or town " to receive, hold, and apply any funds, moneys, or securities which may be deposited with the treasurer of such city or town for the preservation, care, improvement, or embellishment of any public or private burial place situated therein, or of burial lots located in the same." The effect of the Pub. Sts. c. 116, §§ 35, 36, was considered in *Gates* v. *White*, 139 Mass. 353. In that case it was said in the opinion, that § 36 of the Pub. Sts. c. 116, " fairly covers a case like the one before us, where an executor holds money which his testator has appropriated to the purpose of maintaining in repair his cemetery lot, and we think the in-

tention of the Legislature was to enable the judge of probate to carry out the purpose of the will, and to create a trust in a savings bank which should not be void as a perpetuity." See Pub. Sts. c. 144, § 6. The Pub. Sts. c. 116, §§ 35, 37, and 38, were derived from the St. of 1875, c. 174; and the Pub. Sts. c. 116, § 36, from the St. of 1877, c. 162. It is probable that the Legislature, in passing the St. of 1875, c. 174, intended to confer additional powers upon savings banks, and in passing the St. of 1884, c. 186, intended to confer powers upon cities and towns in addition to those conferred by the Pub. Sts. c. 82, § 17, and that in passing the St. of 1877, c. 162, the principal intention was to enable executors, administrators, and trustees holding money in trust for any of the purposes mentioned in the St. of 1875, c. 174, to discharge themselves of the trust by depositing the money in a savings bank under the authority of a judge of probate.

The effect of all these statutes undoubtedly is, that the money, when received by a cemetery corporation, a savings bank, or by the treasurer of a town, upon the trusts described in the statutes respectively, is held upon a valid trust, even if independently of these statutes the trust would be void. Whether the Legislature by the St. of 1877, c. 162, intended that the validity of a trust for the purposes there mentioned should depend in any degree upon the discretion of a judge of probate, certainly does not clearly appear. It might, perhaps, be suggested, that the purposes mentioned in the Pub. Sts. c. 116, § 35, may all be public purposes, and that the cemeteries and cemetery lots intended should be held to be such as are described in the Pub. Sts. c. 82, § 15. In *Gates* v. *White, ubi supra,* however, the lot was in the Lowell Cemetery, which was owned by a corporation, and not maintained by the city of Lowell. The St. of 1884, c. 186, in terms relates to private burial places as well as to those which are public, and to burial lots in the one as well as in the other; and § 8 of the Pub. Sts. c. 82, relates to lots in the cemeteries of corporations.

In the opinion of a majority of the court, the most reasonable construction of these statutes is, that the Legislature regarded the maintenance and improvement of cemeteries and cemetery lots, whether in a legal sense they were public or not, as a matter which concerned public interests, and intended that property

might lawfully be given and held in perpetual trust for the preservation of burial lots in cemeteries, whether the cemeteries were public burial places or not, and that, foreseeing some of the inconveniences which would arise if the trustees must be natural persons only, it also authorized cemetery corporations, cities, towns, and savings banks to act as trustees of such a trust. It is not necessary now to determine whether, if the whole property given should prove to be more than sufficient to accomplish the purpose of the trust, it is not within the power of the Probate Court, or of a court of equity, to set aside a part of the property sufficient for the purpose, and to permit the remainder to be distributed as intestate property.

We are of opinion that the trust is not wholly void, and that the decree of the Probate Court should be affirmed.

*So ordered.*