## Samuel B. Mason, Executor, Appellant, v. Bloomington Library Association et al., Appellees.

1. TRUSTS—*when rule against perpetuities not violated.* A fund provided for the purpose of caring for a burial lot with no limit as to duration, does not violate the rule against perpetuities.

2. TRUSTS—*when cy pres doctrine operates to prevent failure of.* The fact that for any reason an art studio provided to be established cannot be established by the institution or by the individuals mentioned by a testator, will not operate to render the bequest void but the same will be effectuated by a court of equity under the doctrine *cy pres.*

3. APPEALS AND ERRORS—*of what complaint cannot be made.* A party cannot complain of the action of the court with respect to a matter which does not concern his interests.

Bill to construe will. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1907. Reversed and remanded. Opinion filed June 11, 1908.

BARRY & MORRISSEY, for appellant.

E. M. PRINCE, R. E. WILLIAMS and LOUIS FITZ HENRY, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This is a bill to construe the last will and testament of Emily T. Perry. The said testatrix was the only child and only heir at law of Rachel P. Russell, who died December 1, 1883, leaving a last will and testament, which was duly admitted to probate and which contained among other provisions, not now material, the following:

"I give and bequeath to my daughter, Emily T. Perry, the use, occupation and disposition of any of my effects, excepting what is before devised herein, during her natural life; requiring her, in case she should die childless, to donate whatever may remain of said estate to some benevolent object, such as she may select."

It is not important to determine whether this provision of the will of Rachel P. Russell was void for uncertainty, because Emily T. Perry was the sole heir of her mother, and if the bequest was void for such reason, she would take the property absolutely as intestate estate, upon the death of her mother. Emily T. Perry died childless April 1, 1894, leaving her husband, Nelson P. Perry, as her only heir at law, and leaving a last will and testament, which was executed April 27, 1892. The clauses of the will of Mrs. Perry material to the questions here involved, are as follows:

1. "I direct first that all my lawful debts and funeral expenses shall be paid and that the sum of five hundred ($500) dollars shall be placed in the

hands of a proper person as trustee (John H. Russell of Middletown, Connecticut, being hereby empowered to name and appoint such trustee) from which said sum of five hundred ($500) dollars there shall be expended so much as such trustee shall consider necessary and proper for a monument at my burial place, and the residue of such sum of five hundred ($500) dollars shall, by such trustee, be put and kept at interest and such interest shall be annually expended in the care of the family burial lot, where I shall be buried.''

7. ''I give, devise and bequeath in trust to Jonathan H. Cheney, of Bloomington, as trustee, six thousand ($6000) dollars upon the following trusts, viz: The said trustee shall keep and put said sum at interest upon good security, during the lifetime of my husband, Nelson P. Perry, and shall collect the interest therefrom and pay the same as collected to my said husband during the lifetime of my said husband, for his support, and no part of said fund, either principal or interest, shall ever be subject to or liable for the claim or claims of any creditor or creditors of my said husband in the hands of said trustee, or otherwise; and said trustee shall never in anywise be answerable to any creditor of my said husband for or on account of any of said fund, either principal or interest.''

9. ''The residue of my estate, including therein the six thousand ($6000) dollars hereinbefore devised in trust to Jonathan H. Cheney, after said trust shall have terminated by the death of my said husband, I give, devise and bequeath to said Jonathan H. Cheney and Chalmers C. Marquis, trustees, in trust for the following uses and purposes, viz: To establish in connection with the Bloomington Library Association an art studio or art gallery and studio, meaning thereby a suitable place wherein works of art will be collected, kept, preserved or exhibited for the advancement of education in art. The conduct, management and supervision of which art gallery and studio shall be in charge of the officers of the Bloomington Library Association. The said art gallery or studio shall be named the 'Russell Art Annex' or some suitable name or appellation of which the name Russell shall be a

part, in commemoration of my mother, Rachel P. Russell. The said trustees may, in their discretion, turn over to said Library Association, the whole or a part of the principal sum of said fund, for the use aforesaid, or may put and keep the whole, or a part thereof at interest upon good security, collect the interest thereof and pay the same as collected to said Bloomington Library Association for the use as aforesaid.''

By the last clause of her will the testatrix nominated her husband, Nelson P. Perry, and Thomas C. Kerrick as her executors, and they, thereafter, duly qualified as such, and in 1896 filed their original bill to construe said will. The cause was referred to the master but before any hearing was had all the files, together with the evidence taken before the master, were destroyed by fire in 1900. While the cause was pending the executors, by agreement of the parties, sold the real estate, which formed the bulk of the estate involved, and held the proceeds to abide the result of the suit. Nelson P. Perry died January 29, 1905, leaving his last will and testament whereby he bequeathed the residue and greater portion of his estate to his sister, of which will appellant, Samuel B. Mason, was appointed executor. Thereafter, Thomas C. Kerrick, the surviving executor of the will of Mrs. Perry, was granted leave to supply the files and to amend and supplement the original bill. The Bloomington Library Association filed its answer claiming the residue of the estate under the ninth clause of the will, and appellant, as executor of Nelson P. Perry, filed his answer claiming the same fund as intestate property of the testatrix. Answer was also filed by the city of Bloomington, wherein it averred that the Bloomington Library Association had long since ceased to conduct a library and that all of its library and property had been sold and transferred to the Withers Public Library which was duly created under an ordinance of the city of Bloomington, and claimed that said city was entitled to said fund. Upon the hearing the chancellor

entered a decree that the real estate mentioned in the
will of Emily T. Perry belonged to her in fee; that there
was in the hands of the surviving executor the sum
of $4,972.56; that out of said fund there should be set
aside $406 to comply with the first clause of said will,
the sum of $94 having been expended by the executors
for a monument; that John H. Russell had refused to
appoint a trustee under said first clause; and that the
residue of said fund, after paying costs of suit, should
be turned over to trustees for the benefit of the Bloom-
ington Library Association for the purpose of carry-
ing out the provisions of the ninth clause of the will.
The decree then appoints Samuel B. Mason, trustee,
to receive the sum of $406 for the purpose of comply-
ing with the provisions of the first clause, and ap-
points J. H. Burnham and H. H. Green, trustees, to
serve without compensation for the Bloomington Li-
brary Association, to receive from Thomas C. Kerrick,
executor, the balance of the sum of $4,972.56, after
deducting said sum of $406 and costs of suit, and di-
rects said executor to pay to said trustees said sum
of money.

It is first urged on behalf of appellant that the trust
sought to be created by the first clause of the will
whereby the testatrix bequeathed the residue of $500
remaining unexpended after the purchase of a monu-
ment, to a trustee to be appointed by John H. Russell,
to be kept at interest and such interest annually ex-
pended in the care of the family burial lot where the
testatrix should be buried, is a private trust in con-
travention of the rule against perpetuities, and, there-
fore, invalid and void.

In this age the general public manifests an increas-
ing interest in ornamenting and caring for places set
apart for the burial of the dead, and it is a matter of
common knowledge that funds are frequently provided
to be held in trust for that purpose. Cemeteries are
cared for and beautified by trimming the grass and
cultivating foliage and flowers as are parks and other

places of resort for the general public. The legislature has recognized the public interest and demand in this regard by enacting a law expressly authorizing gifts and bequests to directors of cemetery societies or associations, of real or personal property to be held in trust by such directors and the income used for the improvement, maintenance, repair, preservation and ornamentation of burial lots, vaults, tombs and other structures in cemeteries. Rev. Stat. 1905, 223.

In Green v. Hogan, 153 Mass. 462, where the same question was involved, it was held that the enactment of a similar statute in Massachusetts indicated that the legislature of that state regarded the maintenance and improvement of cemeteries and cemetery lots, whether in a legal sense they were public or not, as a matter which concerned public interests, and thereby intended that property might be lawfully given and held in perpetual trust for the preservation of burial lots in cemeteries, and such a trust was held to be valid. In Perry on Trusts, sec. 706, it is said: "It is now settled that a trust to build, maintain and keep in repair tombs, vaults and burying-grounds of the donors, their families or parishes, are so far charitable that they will be carried into effect." We are of opinion that the trust created by the first clause of the will is valid, at least to the extent necessary to constitute a sufficient fund for the purposes named.

It is next insisted that the ninth clause of the will is invalid and void because it makes a bequest in favor of the Bloomington Library Association, a private corporation authorized to issue capital stock to the amount of $100,000 and to make annual distribution of the net rents and profits among its stockholders, and because it provides that the art studio or art gallery and studio is to be established in connection with said Bloomington Library Association, and that the conduct, management and supervision of said art gallery and studio shall be in charge of said association.

The Bloomington Library Association which succeeded to all the property rights of a voluntary association theretofore existing known as the Ladies Library Association of Bloomington, was incorporated under and by virtue of an Act of the legislature approved February 23, 1867, for the purpose, as stated in said Act, "to establish and maintain a library and reading room, to procure literary and scientific lectures and otherwise promote the intellectual improvement of its members." The association was empowered by the Act to create a capital stock not to exceed in amount $100,000, divided into shares of $50 each, for the purpose of promoting its objects, including the erection of a building for its use, and after the payment of all expenses to divide any overplus arising from the rents and profits of any real estate and buildings purchased or built with such capital stock, annually *pro rata* among the stockholders. The Act was declared to be a public Act.

On June 1, 1885, one Sarah B. Withers conveyed to said association a certain lot in the city of Bloomington, upon the condition among others, that said association should erect or cause to be erected upon said lot a building suitable for placing therein its library for the use of the same by its members and the public under the usual and customary regulations adopted by such organizations. The said association accepted said conveyance and erected a building on the premises at a cost of $20,880, and equipped the same with books, pictures and furniture at a cost of about $25,000, and used and conducted the same as a public library and reading rooms until June 18, 1894. On that day said association conveyed to the Board of Directors of the Withers Public Library, organized under the laws of the State of Illinois and an ordinance of the city of Bloomington, all of its property of every character, in trust, upon the condition, among others, that the same should be used as a free public library for the use and benefit of the inhabitants of

the city of Bloomington forever, and said property has since been and is now so used.

Since June 18, 1894, the Bloomington Library Association has ceased to exist as a going concern so far as the exercise by it of its charter powers is concerned. It has had and has no property of any consequence, and has not conducted a library, nor has it any facilities for conducting and managing an art studio or art gallery and studio.

The bequest in the ninth clause of the will here involved does not create a trust for the benefit of the Bloomington Library Association, as is insisted by counsel for appellant. The bequest is to certain trustees, in trust, "to establish in connection with the Bloomington Library Association, an art studio or art gallery and studio * * * wherein works of art will be collected, kept, preserved or exhibited for the advancement of education in art." A charity has been authoritatively defined, as follows: "A charity in a legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show it is charitable in its nature." Jackson v. Phillips, 14 Allen 556; 2 Perry on Trusts, sec. 697; Crerar v. Williams, 145 Ill. 625; Kemmerer v. Kemmerer, 233 Ill. 327.

In 1892, when the will was executed, and in 1894, when it became effective, the Bloomington Library Association was conducting a public library for the use of the public. The testatrix was then an active member of the association. The bequest was in trust for the "advancement of education in art," not alone

of the members of the association, but of the patrons of the library, as it was then conducted, viz: the general public. There are no words in the will limiting the benefits of education in art to any particular class, or to the members of any particular organization, but the benefits intended to be thereby conferred in that regard are general. The provisions of the will directing that the art studio be established in connection with the Bloomington Library Association and that the officers of said association conduct, manage and supervise the same, are merely incidental to the main purpose and object of the gift, which is the establishment of an art studio or art gallery and studio for the advancement in education of art. The fact that for any reason the art studio cannot be established in connection with the association and cannot be managed and controlled by the officers of the association will not operate to render the bequest void. If the main purpose of a charitable bequest is capable of accomplishment, although not in the precise manner contemplated by the donor, a court of equity will effectuate the purpose *cy pres*.

"If a fund is given in trust for a charity, with a direction to accumulate beyond the legal period, or with any other illegal or impossible direction as to the incidental management of the funds, the court will direct a management that is legal and possible, *cy pres* the original direction; and this on the ground that the donor did not intend his charity to fail because one of the incidental directions could not be carried out." 2 Perry on Trusts, sec. 728; Ingraham v. Ingraham, 169 Ill. 432; Grand Prairie Sem. v. Morgan, 171 Ill. 444; Hauser v. Harris, 42 Ill. 425.

It is insisted that in the absence of any showing that Jonathan H. Cheney and Chalmers C. Marquis, the trustees appointed by the ninth clause of the will, had resigned or had refused to serve, the chancellor erred in appointing J. H. Burnham and H. H. Green as trustees to act under said clause of said will. As the

trustees named in the will do not object to the substitution, appellant cannot be heard to complain.

We are of opinion that the finding of the chancellor that the rest and residue of the funds in the hands of the executor, after paying the sum of $406 to a trustee under the first clause of the will and the costs of suit, should be turned over to trustees for the benefit of the Bloomington Library Association for the purpose of carrying out the provisions of clause nine of the will, was erroneous. As has heretofore been stated that association since June 18, 1894, has not conducted a library and has had no property or facilities for so doing. It has nothing with which an art studio or art gallery and studio can be connected, and its officers, as such, have no authority or control over or with respect to any property which can be used to carry out the provisions of clause nine of the will. The incidental conditions therein prescribed by the testatrix, relating to the establishment of a place in connection with the Bloomington Library Association and the management and control of the charity by the officers of said association, have become and are impossible of performance, and the court should, therefore, have effectuated the charitable use *cy pres*. The record before us does not authorize this court to enter more specific directions with reference to the manner in which the intention of the testatrix should be effectuated upon an application of the doctrine of *cy pres*.

The decree of the Circuit Court will be reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*