## *In re* MORE'S ESTATE.

### APPEALS OF TRUSTEES OF ELMWOOD CEMETERY.

1. ESTATES OF DECEDENTS—APPEAL AND ERROR—PARTY AGGRIEVED —JUDGMENT—PROBATE COURT.

    On motion to dismiss an appeal from probate court from an order refusing to require the executor of an estate to pay over the sum of $1,000 left in trust by the will of decedent for the maintenance and care of her cemetery lot and grave, the trustees of a cemetery corporation having charge of the cemetery in which decedent was buried, were rightly held to be aggrieved parties, entitled to appeal: in legal acceptation a party is aggrieved by a judgment or decree which operates on his rights in property or bears directly upon his interest.

2. SAME—EVIDENCE—ERROR.

    *Held*, also, that the finding of the circuit court reversing the order of the probate court was supported by competent evidence, and there was no prejudicial error in the reception of evidence.

3. SAME — DEVISE — SPECIFIC DEVISE — CHARGE UPON PROPERTY TRANSFERRED BY WILL—EXECUTORS AND ADMINISTRATORS.

Where decedent transferred by her will certain real property subject to a charge of $1,000, to be set aside and invested and the income used to maintain her cemetery lot, it was unimportant that the proofs did not disclose any personal property of the estate out of which to pay the $1,000.

4. SAME—TRUSTS—WILLS.

It becomes the duty of the executor under such will to raise the required amount by sale of the real estate charged therewith, or by collecting that amount from the devisee of the property, he would be bound to make the payment or to exhaust the security before he could obtain his discharge and cancellation of his official bond.

5. SAME—TRUSTS—OMISSION TO NAME TRUSTEE.

It is a general rule of equity that a trust perfectly defined will not fail for want of a trustee; by its inherent jurisdiction over trusts, equity can supply one.

6. SAME—PROBATE COURTS—INTENT OF TESTATRIX.

Evidence that the remains of the testatrix, of her husband and several children were buried in a certain cemetery lot, owned by the husband, that she owned no lot, justified the trial court in finding that the lot in question constituted the family burial lot, and the will was intended to provide for such lot.

7. STATUTES—CONSTRUCTION.

Notwithstanding that a statute in derogation of the common law must be construed strictly, it is well settled that it must be construed sensibly and in harmony with the legislative purpose. When acts of the legislature are *pari materia*, though enacted at different times and not referring to each other, they are to be taken and construed together, as explanatory of and supplemental to each other, and sustained if possible in order to effectually carry out the legislative intent and produce a consistent and harmonious system.

8. CEMETERIES—TRUSTS—CARE OF LOTS.

It was the legislative intent, in enacting Act No. 62, Session Laws 1849, whereby the trustees of Elmwood cemetery were constituted a body politic and corporate, and empowered to hold in trust any donation or bequest

of property, and to apply the same or the income thereof in improvements, decorations and repair of lots, etc., also by amending the same section (Act No. 235, Local Acts 1883), to confer authority to receive donations and bequests for the purposes specified, in perpetuity.

Error to Wayne; Hally, J. Submitted January 8, 1914. (Docket No. 28.) Decided March 26, 1914.

Appeal to circuit court by the trustees of Elmwood cemetery from an order of the probate court holding a certain legacy of the will of Huldah More, deceased, invalid. From an order sustaining the validity of the bequest, Thomas Hislop, executor, and Adelia Clark, residuary legatee under the will, bring error. Affirmed.

*Ed. E. Kane,* for appellants.

*Bethune Duffield,* for appellees the trustees of Elmwood cemetery.

STONE, J. The history of the matters involved in this litigation may be stated as follows:

Huldah More died on April 2, 1904, leaving a last will and testament which was admitted to probate by the probate court of Wayne county on May 26, 1904, and the appellant Thomas Hislop was appointed executor, and qualified. By this will the testatrix gave a number of money legacies and the will contains the following provisions:

(1) "I direct the payment of my debts and funeral expenses and the erection of a suitable monument over my grave, out of my estate; said monument not to exceed in cost the sum of one hundred dollars, and I further direct that the sum of one thousand dollars be set aside, out of my estate, and invested, and the income derived therefrom devoted to the care and ornamentation of my grave and burial lot. * * *

"(8) I give, devise and bequeath to William H. Clark of Vernon, in the State of Michigan, and to his heirs forever, the north thirty-three (33) feet of out-

lot nineteen (19), and the south half (½) of outlot eighteen of the Guoin farm, in the city of Detroit, Wayne county, Michigan, the same being the land owned by me on the east side of Russell street and north of Superior street, when said Superior street is extended east of Russell street and south of Willis avenue, in said city of Detroit, subject, however, to the payment of said sum of one thousand dollars, set apart for the care and ornamentation of my grave and burial lot, and also subject to the payment of the legacies in my will hereinafter named."

After certain other specific bequests, testatrix gave the entire residue of her estate to her daughter, Adelia Clark, the other appellant.

Huldah More did not own any lot in Elmwood cemetery when she died. Her husband bought lot 162, in section N, in that cemetery, in 1856, and it stood in his name at the time of her death, and now stands in his name. Huldah More and her husband, who died in 1874, and several of her children, who died before her, were buried in lot 162. Elmwood cemetery is controlled by trustees of Elmwood cemetery, a corporation.

On April 22, 1910, the trustees of Elmwood cemetery filed in the probate court of said county, in said estate, a petition for an order that said sum of $1,000, referred to in testatrix's will, be paid over to it. A full hearing was had before said court upon said petition, and on the 27th day of April, 1910, said petition was denied, and no appeal was taken from said order. Afterwards, upon the petition of the trustees of Elmwood cemetery for the appointment of itself or some other suitable person as trustee of said $1,000 fund, the probate court, before the appeals herein were taken, appointed the Security Trust Company, a corporation, as, and it now is, trustee of said fund. Subsequently an application was made to the probate court by the trustees of Elmwood cemetery and the Security Trust Company, as trustee, jointly, for an

order directing the executor to turn over said sum of $1,000, with interest, to said trustee, and an order was entered denying this request on August 2, 1911.

The executor of Huldah More's will filed his final account showing the payment of all the expenses of administration and all debts, and of all legacies except said bequest of $1,000, and it was allowed as stated. The executor reported that this legacy had not been paid because he had been advised "the above provision in said will is void."

Appeals were taken to the circuit court by the trustees of Elmwood cemetery alone, from both of these orders; said Security Trust Company, as trustee, did not join in said appeals, nor itself take any appeal from either of said orders.

By consent of counsel, these appeals were consolidated and heard together before the circuit judge without a jury, and on January 9, 1913, he decided that said $1,000 bequest was valid, and should have been paid by the executor. On the following day judgment was entered in accordance with said decision, but, on the application of the appellant, this judgment was vacated and set aside on January 10, 1913, and their attorney then filed a demand for a special finding of facts and law by the court.

On March 7, 1913, appellants here made a motion to dismiss both of said appeals, for the reasons that the proper appellant was not before the court, and that the trustees of Elmwood cemetery were not interested in the said legacy of $1,000 in such a manner and to such an extent as rendered it aggrieved in any way by the orders of the probate court, from which said appeals were taken; and that, under the statutes of this State, said trustees of Elmwood cemetery, a corporation, had and has no legal right to take and prosecute said appeals. Said motion was argued on the 15th day of March, 1913, and denied; the trial

court holding that the trustees of Elmwood cemetery "is a person aggrieved," within the meaning of the statute, which provides for an appeal from the order of the probate court, and was entitled to maintain its appeal therefrom to said court. The trial judge then filed special findings of fact and law, and held that the bequest of $1,000 was valid, and that the executor should have paid it, and judgment was rendered in accordance therewith. Appellants proposed amendments to said special findings of fact and law, all of which were refused, and said findings were duly settled according to the rules and practice of the court, and appellants filed exceptions to said special findings.

The case is here for review upon writ of error, and under appropriate assignments of error the claims of appellants are presented under the following heads:

(1) Motion to dismiss appeals.

(2) Incompetent evidence.

(3) No showing of personal property with which to pay.

(4) The payment of this $1,000 is, by the will, expressly charged upon certain real estate specifically devised.

(5) The provision in the will in regard to this $1,000 creates a perpetual trust and is therefore void.

1. It is the contention of appellants that this question was open to them at any stage of the proceeding; that it presented a question of want of jurisdiction over the subject-matter and could not be waived. On the part of the appellee it is urged that this question was not presented to the court until all the testimony had been taken, the case argued and submitted, exclusively upon the legal question as to whether the bequest was valid, or was void because contravening the rule of perpetuities. At the request of the trial judge, it is said briefs were filed; appellants' brief containing no reference to the dismissal of the ap-

peals because of the alleged jurisdictional defect or for any other reason.

As already noted, on January 9, 1913, the circuit judge handed down his opinion ordering judgment for payment of the legacy. On the next day, at the request of appellants, the judgment was set aside and the demand for findings of fact and law by the court was filed; that no further steps were taken for nearly two months, when, on March 7th, the motion was made to dismiss the appeals; and that this motion was argued on March 15th and denied. It is urged that this delay was inexcusable, and, although there were no formal pleadings in the circuit court, yet the trial took place as above indicated. It is said that applying the rule adopted by this court in *Snyder* v. *Washtenaw Circuit Judge,* 80 Mich. 517 (45 N. W. 596), the motion should not be considered, and should be treated as waived. Upon the merits of the question it is contended, as found by the circuit judge, that said trustees of Elmwood cemetery are the only persons aggrieved by the orders of the probate court appealed from. That if it should turn out that this fund is not available, and the lot, monument, and gravestones belonging to this family fall into a state of disrepair, and become an eyesore, through the neglect of the heirs of Mrs. More to keep them in proper condition, then the cemetery authorities, not being willing to allow such condition to disfigure the beauty of Elmwood cemetery, would be obliged to make the repairs out of funds belonging to Elmwood cemetery. It is also urged that the Security Trust Company, appointed trustee of this fund by the probate court, has no pecuniary interest in the fund, its only duty being to conserve the fund and expend the income as the needs of the lot and appurtenances require; and that, if this legacy is not paid, the loss will come directly upon the cemetery corporation; and

therefore it has a very substantial and pressing interest therein.

In legal acceptation a party is aggrieved by a judgment or a decree when it operates on his rights in property or bears directly upon his interest. 2 Cyc. p. 633; *Cole* v. *Cole's Estate*, 125 Mich. 661 (85 N. W. 113). We agree with the circuit judge, and think there was no error in overruling the motion to dismiss.

2. Incompetent evidence. We have examined the record upon this subject and do not find that any error was committed by the trial judge in the reception of the evidence. Some of it, it is true, was rather remote, but we find no prejudicial error in its acceptance. We find there was competent evidence to support the finding of the circuit judge, and that such finding of fact should not be disturbed.

3. The third point is that there was no showing of personal property with which to pay. The record fails to disclose that this point was presented by the appellants to the trial court. No reference was made thereto in the argument and briefs, it is asserted, nor on the motion to dismiss, nor in the points of law which were presented to the court to be found, nor in the exceptions filed to the court's findings of facts and law. We doubt if the question is before us properly. It is, in our opinion, a sufficient answer, however, that the legacy in paragraph 1 of said will is by the eighth paragraph, which we have quoted, made an express charge upon real estate therein specifically devised.

4. It is said that the payment of this $1,000 is by the will expressly charged upon certain real estate specifically devised. The same point is urged by appellee as on the last point, that the question was not raised in the court below. It seems to us, however, that it was and is the duty of the executor to raise the

sum required by the said legacy, in case the same is held valid, by sale of the real estate charged therewith, by paragraph 8 of said will, or to collect the amount thereof from the devisee or his assigns. And, if it be found that said legacy is valid, the executor would be bound to make payment thereof, or to exhaust the security, before he could obtain his discharge and the cancellation of his bond.

5. Is the bequest of $1,000 in the first paragraph of Huldah More's will void, because it contravenes the common-law rule against perpetuities? This presents the important question in the case. We find here a perfectly defined trust; the only omission being in naming the trustee, which omission has been supplied in the appointment, by the probate court, of the Security Trust Company as such trustee. This court said, in *Penny* v. *Croul*, 76 Mich., at page 476 (43 N. W. 651, 15 Am. St. Rep. 318) :

"Had no trustee been named, the rule is familiar that a perfectly defined trust will not fail for lack of a trustee, but that a court of equity, by its general inherent jurisdiction over trusts, can supply one."

There can be no question that the testatrix must have intended said $1,000 bequest as a perpetual trust. No other construction is possible to sustain its validity. No ultimate disposition of the fund is provided for, nor any limitation based upon lives. Counsel for appellants devotes some pages of his brief to maintain this proposition, and it must be conceded. It is undisputed by this record that the remains of the testatrix, of her husband, and of several of her children are buried in lot 162 in this cemetery, and we think the circuit court was justified in finding, there being no evidence to the contrary, that said lot constitutes the family burial lot, which was the object of her care and solicitude in making the bequest.

Elmwood cemetery was incorporated under the

corporate name, "Trustees of Elmwood Cemetery," by Act No. 62 of the Session Laws of 1849. Section 1 provides as follows:

"Be it enacted, etc., * * * that Henry Ledyard, Charles C. Trowbridge, John Owen, Israel Coe, John S. Jenness and Alexander D. Fraser, and their successors, be and they are hereby constituted a body politic and corporate, by the name and style of the 'Trustees of Elmwood Cemetery,' and by that name to have perpetual succession, and be capable of suing and being sued."

Section 3 specified its powers; required the application of all moneys realized from the sale of lots, after paying the original purchase price of its land, to the care and improvement of the cemetery. The last clause of said section reads as follows:

"The said corporation may hold in trust any donation or bequest of property, and may apply the same or the income thereof in the improvement or embellishment of the cemetery, or for the erection, repair, preservation and renewal of any tomb, monument, or fence, or for the planting or cultivation of trees, shrubs, flowers, plants, in and around any cemetery lot, or for the improvement of said premises in any other form or manner conformable to the terms of said grant or bequest."

By Act No. 235, Local Acts of 1883, section 3 was amended by authorizing the corporation "from the sale of lots or otherwise to create a sinking fund for the purpose of producing an income for the care and maintenance of said cemetery," which amendment re-enacted the final clause of said section above quoted.

Trustees of Elmwood cemetery thus created is not a corporation organized for profit; it has no stock or stockholders; and its accumulations, if any, can only be used in the manner prescribed by its charter, viz., for the care, improvement, and maintenance of the cemetery.

It is the claim of the appellee that the last clause of section 3 of its charter is broad enough to grant to the corporation the power to hold in trust any donation or bequest of property, and to apply the same, or the income thereof, in the improvement of the cemetery, or any burial lot therein in any form or manner conformable to the terms of such grant or bequest, even though such grant or bequest contemplated the perpetual use of the trust fund for such purpose; and that the intent of the legislature, by the use of the language thus employed, was to remove the disability then existing by reason of the common-law rule against perpetuities. That, in fact, any other construction must result in nullifying the powers therein expressed and render said clause ineffective and meaningless.

In 36 Cyc., at page 1145, referring to construction of statutes changing the common law, it is said:

"The court must assume, however, that the legislature knew the existing law, and that its purpose in enacting the statute was to make some change in the former law."

It is worthy of notice that the clause we have referred to follows closely after section 1, which grants perpetual succession to the corporation; and it is fair to presume that the legislature must have had this in mind when section 3 was framed.

As stated in 36 Cyc., at page 1131:

"Words, phrases, and sentences of a statute are to be understood as used, not in any abstract sense, but with due regard to the context, and in that sense which best harmonizes with all other parts of the statute."

"Notwithstanding * * * that a statute in derogation of the common law must be construed strictly, it is well settled that it must be construed sensibly and in harmony with the legislative purpose." *In re Cameron's Estate*, 170 Mich. 578, 582 (136 N. W. 451).

"In construing a statute, the legislative intent may often be ascertained from the provisions of the sections in the immediate connection in which it occurs." *In re Corby's Estate,* 154 Mich. 353, 357 (117 N. W. 906).

"When acts are *pari materia,* though enacted at different times and not referring to each other, they · are to be taken and construed together, as explanatory of and supplemental to each other, and sustained, if possible, in order to effectually carry out the legislative intent and to produce a consistent and harmonious system." *People* v. *Mire,* 173 Mich. 357, 365 (138 N. W. 1069).

Not only have we the statutes already referred to, but, as bearing upon gifts and donations in perpetuity for the care of cemetery lots, it is well to refer to Act No. 81 of the Public Acts of 1903 (4 How. Stat. [2d Ed.] § 10702 *et seq.*), being an act to provide for the care and preservation of cemetery lots. Section 1 of this act authorizes any person, by will or otherwise, to deposit not less than $50 per lot with any county treasurer, the interest only of which is to be used for the purpose of caring for testator's cemetery lot. Then follows this proviso:

"Provided this section shall not affect any municipality or association that has at this time provision for such deposit of money and laws governing the maintenance of cemetery lots."

It is asserted by appellee that Elmwood cemetery was at that time the only cemetery in the State enjoying the right, under legislative enactment, to accept and perform such trusts, and that this proviso evidently referred to its charter. And, in fact, appellants' counsel notes the applicability of this proviso to Elmwood in his brief.

Section 7 of Act No. 81 provides that every county in this State having any such cemetery fund shall always be held accountable and liable for any and all such cemetery money, thus implying perpetual reten-

tion of such deposits. As showing the legislative intent, we may well refer to Act No. 209 of the Public Acts of 1903 (4 How. Stat. [2d Ed.] § 9411), adding section 15 to the "Rural Cemetery" act. Section 15 of that act provides as follows:

"All corporations established under the provisions of this act may receive and hold any grant, donation, or bequest made to them for the purpose of perpetually caring for and maintaining the lots of said donors," etc.

It is not here claimed that Elmwood cemetery is a rural cemetery, but Act No. 209 shows the legislative intent to give rural cemeteries also power to receive grants for perpetually caring for and maintaining the lots of donors.

The legislature of 1909, by Act No. 95 (1 How. Stat. [2d Ed.] § 1521 *et seq.*), passed an act to authorize township boards of health to receive and hold property, real and personal, left to said board in trust for the upkeep of any cemetery or lots therein. Section 2 of the act provides as follows:

"If left in money it shall, unless otherwise expressed by those making such gift, grant or bequest, be invested as a permanent fund."

To show the legislative intent, we might refer to Act No. 125 of the Public Acts of 1911 (4 How. Stat. [2d Ed.] § 10700), amending title and section 1 of Act No. 122 of 1907, "relative to gifts for religious, educational, charitable and benevolent purposes," by adding "or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained." A similar statute, passed in 1913, is Act No. 380, entitled "An act to regulate gifts of real and personal property to cities, villages and other municipal corporations, and to validate all such gifts heretofore made," and contains in section 1 the following clause:

"All such gifts heretofore made, either by grant, devise, bequest or in any other manner are hereby declared valid, though they violate any statute or rule against perpetuities, the same as if this act had been in effect when made."

It is urged by counsel for appellee, and we think with much force, that, applying the rules of construction as laid down in the foregoing citations, it is clearly apparent that the intent of the legislature in enacting the enabling clause in section 3 of trustees of Elmwood cemetery's charter was to invest that corporation with the power to accept and execute such trusts in perpetuity.

An examination of the cases cited by counsel shows that this identical question has been decided by the courts of several States.

In the State of New Jersey, by an act approved March 29, 1878 (P. L. 1878, p. 209), section 1 applies to "any cemetery association within this State existing under special statute, or by virtue of an incorporation under the general statutes of which this is a supplement."

SEC. 2. "That any association incorporated as aforesaid may take and hold any property, real and personal, bequeathed or given upon trust, to apply the income thereof under the direction of the trustees or managers of such association for the improvement or embellishment of such cemetery, or the erection or preservation of any buildings, structures, fences or walks erected or to be erected upon the lands of such cemetery association or upon the lots or plots of any of the proprietors, or for the repair, preservation, erection or renewal of any tomb, monument, gravestone, fence, railing or other erection in or around any cemetery lot or plot, or for planting and cultivating trees, shrubs, flowers or plants in and around any such lot or plot, or for improving or embellishing such cemetery or any of the lots or plots in any other manner or form consistent with the design and purposes of the association, according to the terms of such grant, devise or bequest."

We have quoted section 2 because of its similarity to the last clause of section 3 of the Elmwood cemetery act. This statute was passed upon in *Moore's Ex'r* v. *Moore,* 50 N. J. Eq. 554 (25 Atl. 405), in the year 1892, and it was there held that the rule against perpetuities, so far as it affected gifts made to cemetery corporations, for certain designated purposes, was abolished in that State by this statute; the vice chancellor saying:

"The design of this statute, as I interpret it, was to abrogate the rule against perpetuities, so far as that rule applied to gifts made to cemetery corporations, and to make it lawful for such corporations to hold property, acquired by gift, subject to perpetual trust for certain designated purposes."

This is a very instructive opinion, and we regret that we cannot quote more fully from the language of the court.

Counsel for appellants refers to the case of *Hartson* v. *Elden,* 50 N. J. Eq. 526 (26 Atl. 561), in support of his contention. The distinguishing feature of the two cases is that in *Hartson* v. *Elden* the testator died in 1875, more than two years before the enactment of the statute. The chancellor in that case quotes, with approval, much of the language of *Moore's Ex'r* v. *Moore, supra.*

In Massachusetts it was provided by statute as follows:

"Any such corporation (*i. e.,* cemeteries) may take and hold funds upon trust, to apply the income thereof to the improvement or embellishment of the cemetery or to the care, preservation, or embellishment of any lot or its appurtenances."

In *Re Bartlett, Petitioner,* 163 Mass. 509 (40 N. E. 899), the testator gave his burial lot to his executor and trustees, "who will also have charge of the homestead fund, the income of which, in part, shall be used to keep the lot and the monument always in good

order." On page 513 of 163 Mass. (40 N. E. 900), the court said:

"We think that a trust to keep the burial lot and the monument of the testator always in good order is under our statutes a good perpetual trust."

Counsel for appellants refers to *Bates* v. *Bates*, 134 Mass. 110 (45 Am. Rep. 305). A careful examination of this case shows that the bequest was held void because it did not provide for the care, preservation, or embellishment of any lot or its appurtenances. The case is readily distinguished from *In re Bartlett, Petitioner, supra.*

In Rhode Island there was similar legislation which was construed in *R. I. Hospital Trust Co.* v. *Town Council*, 29 R. I. 393 (71 Atl. 644), and the bequest was sustained because the statute had made provision for such perpetual trust; and it was held that, a valid trust having been created by the will, the same was valid.

In the State of New York the statute is almost identical with the New Jersey statute, and one, on examination, must become satisfied that the last clause of section 3 of the Elmwood act was copied from the New York statute. This statute is construed in the case of *In re Schuler's Estate*, 24 N. Y. Supp. 847. We call attention to the language of the will in that case, as well as the language of the court, where it says, referring to the statute:

"Here is a broad, comprehensive legislative enactment, as to the purpose and intention of which there can be no doubt. Its language is full and explicit, and clearly covers the purpose of the testator."

Referring to their statute against perpetuities, the court said:

"This statute against perpetuities is general, and applies to all cases, except where special provision is otherwise made. The same power that created the

general prohibition can authorize an exception, and determine that the general provision shall not apply. The legislative power had prohibited generally such perpetuities, and the same power has, as to cemetery corporations, removed such restriction, and bestowed affirmatively the power and right to hold funds for the purposes specified in this will, and I see no reason why both should not stand with force, the latter as a statutory exception to the general law."

We have examined the other cases relied upon by appellants' counsel, but think they are either overruled or not applicable to the instant case.

This brings us to the case of *Lounsbury* v. *Burial Ass'n*, 170 Mich. 645 (129 N. W. 36, 137 N. W. 513). The record in that case (page 33, testimony of Robert J. Lounsbury) discloses the fact that Noah Taylor died in the year 1885, and the certificate of the probate of his will (page 37) shows that it was probated on August 6, 1885. As the will spoke from the date of the testator's death, there was then no statute which would relieve the bequest from the disability of the rule against perpetuities, and this court could not sustain the validity of the bequest of the $100 involved without overruling the case of *Palms* v. *Palms*, 68 Mich. 379 (36 N. W. 419). The case is thus readily distinguished from the instant case. As the trial judge well said:

"In this connection it might be asked: If a cemetery association may take a perpetual trust fund, why is it not competent to give it one, and what purpose would there be in empowering it to take, if a bequest of that character would be void if given?"

The query is answered in the Rhode Island case above cited, wherein it was said:

"As the statute has made provision for such a perpetual trust, a testator has a right to avail himself of such provision by means of a legacy to a town council for such uses in his last will."

We have examined the other assignments of error, but think them not well founded, and are of the opinion that the learned circuit judge reached the correct conclusion.

The judgment of the circuit court is affirmed.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.