**Walter EARNEY et al., Appellants,**

**v.**

**David Lee CLAY, Dyral Branson and Crawford County, Missouri, Respondents.**

**No. 54862.**

Supreme Court of Missouri,
Division No. 2.

Feb. 8, 1971.

John L. Woodward, Steelville, for appellants.

G. C. Beckham, Steelville, Charles T. Smallwood, Northern, Williams & Smallwood, Rolla, for respondents.

STOCKARD, Commissioner.

Ethel Clay, the widow of Frank Clay, died on October 2, 1966, leaving no lineal descendants. Except for the payment of debts and placing a marker on her grave, her entire estate, which consisted of real and personal property, was disposed of by paragraph 4 of her will, which in the parts material to the issues on this appeal, was as follows:

"* * * I will, bequeath and devise all of the rest and residue of my property * * * (after same has been reduced to cash as hereinafter provided) in trust, to the then acting County Court of Crawford County, Missouri, to be held in trust by said Court and to its successors in office, in accordance with the provisions of Sections 214.150 and 214.160 and 214.170 and 214.180, Revised Statutes of Missouri 1949, for the purpose of the perpetual care and maintenance of my grave site, and the grave site of my husband, Frank Clay and the grave sites of the Clay family located in the Liberty Cemetery which is situated near Steelville, Missouri * * *."

Appellants, heirs at law of Ethel Clay, filed suit to contest her will on the grounds that it violated the rules against perpetuities and restraint on alienation, and that Ethel Clay lacked the requisite testamentary capacity. The verdict of the jury was to sustain the will.

■ We shall first consider appellants' contention that the provisions establishing the trust are void because they violate the rules against perpetuities and against restraints on alienation.

We are not informed whether the Liberty Cemetery is public or private, but in either event the cemetery as such is not the beneficiary of the trust. The income is to be spent for the improvement and maintenance of only certain graves therein. In the absence of a statute, a bequest for the perpetual care and improvement of individual burial lots is not a bequest for a charitable pur-

pose and is void as a perpetuity. Clark v. Crandall, 319 Mo. 87, 5 S.W.2d 383; 14 C.J.S. Charities § 14; 15 Am.Jur.2d, Charities § 83; Annotation 47 A.L.R.2d 623. The issue is whether certain statutes in this State result in this trust not being subject to the rule against perpetuities. We shall summarize the applicable statutory provisions except where the exact language should be set forth.

Section 214.140 (this and all subsequent statutory references are to RSMo 1969, V. A.M.S.) provides that it "shall be lawful" for any person to bequeath or place in trust any real or personal property, or the income therefrom, for the use and benefit of any public or private cemetery in this State, or for "maintaining, improving or beautifying any grave, lot, * * * in any such cemetery."

Section 214.150 provides that the county courts of the respective counties of this State shall become trustees of any fund which may be created by any person for the purpose of maintaining in part or whole any public or private cemetery in their respective county, and that when a gift or bequest is made to the county court "they shall accept the same upon the terms and conditions of said gift or bequest and administer said trust fund as herein provided."

Section 214.160 provides for the investment of funds received by a county court in trust, and § 214.170 authorizes the court to designate an organization or individual, in certain circumstances, to administer the income from such trusts.

Appellants argue that these statutes do not provide for or authorize an exception to the rule against perpetuities insofar as they apply to private trusts, but instead merely authorize the creation of trusts for the stated purposes subject to the rule. This contention is based in part on the fact that in the above statutes there is no express statement that the trust so authorized may be perpetual.

As stated in 47 A.L.R.2d at pp. 611–612, the rule prohibiting the establishment of a trust in perpetuity for the maintenance and repair of private burial lots led to the enactment of statutes in many states authorizing such trusts, and although we find no case from this jurisdiction expressly construing the above statutes as authorizing such trusts in perpetuity (but see the dicta in Clark v. Crandall, supra), similar statutes have been so construed in other jurisdictions. In some states the statutes expressly provide that such trusts shall not be subject to the rule against perpetuities, State, for Use of Woodlands Cemetery Co. v. Lodge, 41 Del. 125, 16 A.2d 250; In re Pfund's Estate, 93 Cal.App.2d 444, 209 P.2d 52, or that such trusts shall be considered to be on the same basis as a charitable trust, Bronson v. Strouse, 57 Conn. 147, 17 A. 699, or that such trusts may be "forever." Huston v. Dodge, 111 Me. 246, 88 A. 888. In at least one state, where apparently there was no statute purporting to exempt trusts for the perpetual care of individual lots from the rule against perpetuities, the courts have held that such a trust is for a charitable use on the basis of general benefit to the community. Nauman v. Weidman, 182 Pa. 263, 37 A. 863. In other states the statutes are in substance the same as in this State, and without exception, so far as our research has discovered, in every such situation the courts have held that the purpose of the statutes was to authorize trusts in perpetuity. See Driscoll v. Hewlett, 198 N.Y. 297, 91 N.E. 784; In re More's Estate, 179 Mich. 237, 146 N.W. 319; Green v. Hogan, 153 Mass. 462, 27 N.E. 413; In re Baeuchle's Will, 276 App.Div. 925, 94 N.Y.S.2d 582; Leaphart v. Harmon, 186 S.C. 362, 195 S.E. 628; Moore's Ex'r. v. Moore, 50 N.J.Eq. 554, 25 A. 403; In re Bartlett, 163 Mass. 509, 40 N.E. 899; In re Schuler's Estate, Surr.Ct., 24 N.Y.S. 847.

Iglehart v. Iglehart, 204 U.S. 478, 27 S.Ct. 329, 51 L.Ed. 575, involved the construction of a statute of the District of Columbia similar to that in Missouri. In this State the rule against perpetuities is a part of the common law, but in the District of Columbia it was set forth in a statute which had been enacted subsequent to the statute which authorized trusts for the maintenance of burial lots. It was held that the statutes must be read together, and that "That policy, as indicated in the section [authorizing a trust for maintenance of a cemetery lot], permits in the District exactly what is provided for in this will,—namely, a trust to a cemetery (incorporated) association for the maintenance of a lot and a monument in perpetual good order and condition."

In Green v. Hogan, supra, the statute authorized a bequest to towns and cities to be held in trust for the maintenance of burial lots therein, but did not expressly state that the trust could be perpetual. The court held that the "most reasonable construction of these statutes is that the legislature regarded the maintenance and improvement of cemeteries and cemetery lots, whether, in a legal sense, they were public or not, as a matter which concerned public interests, and intended that property might lawfully be given and held in perpetual trust for the preservation of burial lots in cemeteries, whether the cemeteries were public burial places or not, * * *." We note that in the statutes of this State under consideration, the county court is authorized to accept gifts and bequests "upon the terms and conditions of said gift or bequest," and Ethel Clay provided in her will that the purpose was for "the perpetual care and maintenance" of the designated graves. In Driscoll v. Hewlett, 132 App.Div. 125, 116 N.Y.S. 466, it is pointed out that such a provision in the New York statute had been eliminated by amendment, yet the court still held that the trust for the care of the testator's burial lot should be perpetual, and on appeal, Driscoll v. Hewlett, 198 N.Y. 297, 91 N.E. 784, it was said that "Unless such a construction be given to the statute as to permit of a perpetual trust, * * * it would have little value."

We agree with what we find to be the uniform construction of statutes of other states which are similar to those under con-

sideration, and we conclude that the intention of the legislature in enacting those statutes was to authorize such trusts to be in perpetuity. If trusts such as we have under consideration are subject to the rule against perpetuities, the care of cemetery lots could extend for only twenty-one years because there are no lives in being, and the instrument creating the trust would have to so limit the duration or the attempted trust would be void. Except that perhaps the county court could not act as trustee, a trust for such purpose, with an authorized trustee, could have been created for a period of twenty-one years without the aid of the statutes. §§ 214.160 and 214.170 must be read together, and when we do so, we are constrained to conclude that the legislature could not and did not intend the result contended by appellants.

Appellants also contend that the provisions of the will creating the trust is void because they are in violation of the rule against the suspension or restraint on alienation of property. They cite Missouri State Highway Commission v. Stone, Mo.App., 311 S.W.2d 588, and Magee v. Mercantile-Commerce Bank and Trust Co., 343 Mo. 1022, 124 S.W.2d 1121. The rule relied on is one of common law. In the Stone case it was held that what is referred to as a "pre-emption agreement" which extended indefinitely to the heirs and assigns of the parties the right to purchase land at a stipulated price was void because it constituted an unreasonable restraint on alienation. In the Magee case, an agreement to repurchase bonds was held to be limited to a reasonable time; in that case to the period of limitations for an oral contract.

We do not consider either case to be controlling here. As noted, the rule is one of common law, and it expresses the public policy of this State. However, the same authority which declared that public policy, as the legislature did by incorporating this part of the common law into the law of this State, § 1.010, may create an exception thereto. In re Schuler's Estate, Surr.Ct., 24 N.Y.S. 847. We hold that by the enactment of the statutes cited above pertaining to the creation of trusts for the perpetual maintenance of cemetery lots, the legislature intended to and did create such an exception.

In the trial before the jury on the issue of testamentary capacity of Ethel Clay, the appellants requested and the court refused an instruction as follows:

"That court instructs the jury that in order to sustain any unjust, unnatural or absurd will which may be contested, fair proof should be afforded that the testatrix was of sufficient capacity at the date of the execution, to comprehend its import and that a harsh and unnatural disposition by the will in question is a circumstance which tends to discredit the makers testamentary capacity."

Aside from the fact that this instruction does not follow the overall intent of MAI in that it does not submit the ultimate issue for determination, it assumes the will is "unjust," "unnatural [and] absurd," and that the provisions thereof were "harsh and unnatural." For these reasons, if no other, the instruction was properly refused. We also note that the ultimate issues which this instruction purported to submit was substantially covered by the other instructions. For these reasons, no error resulted from the refusal of the trial court to give the requested instruction.

Appellants assert that error resulted from overruling their objection to testimony given by the attorney-scrivener of the will because he testified (a) to declarations of Frank Clay, and (b) to declarations of the testatrix, all of which was hearsay.

In the point or argument thereunder appellants do not identify the statements of Frank and Ethel Clay testified to by the scrivener. We assume reference is intended to testimony set out in appellants' statement of facts which we shall quote, without the page references, and which was as follows: "G. C. Beckham testified that one day in July 1960 Frank Clay and Ethel Clay

appeared in his office and directed him to prepare reciprocal wills for them and their instructions were to make the provisions as they appear in the will in question. Mr. Beckham testified to statements made to him by Frank Clay and Ethel Clay at the time they were discussing the disposition of their property." By turning to the pages of the transcript to which reference is made we find that the scrivener testified that Mr. Clay stated that "if he died first he wanted everything to go to his wife," and when asked if he wanted to leave anything to his kinfolk, he replied that "the only relative we might be obligated to would be my brother, Charley, and Charley has just one son, he is not married. They are all well fixed or comfortably fixed." He also testified that Ethel Clay said, "We have so many kinfolks on both sides of the family if we divided what we left among them they wouldn't be anyone get enough to help them any way." He then testified that "they proceeded to tell me just what they wanted done with the residue of that property when the last one was dead, that is, they wanted it left in a trust to take care of their graves and the other graves of the Clay family at the Liberty Cemetery."

The real estate was jointly owned, and Frank Clay died in 1962, several years before his wife. Each prepared a will leaving everything he or she owned to the other, and providing for disposition of the property of the survivor in the manner as provided in the will of Ethel Clay. At the death of Frank Clay, an order from the probate court was obtained refusing letters of administration, and his will was not probated.

We note that the only objection made by appellants occurred in this manner: After the scrivener had testified that Mr. and Mrs. Clay had come to his office, told him that they wanted to make wills, and had discussed generally what they owned and how the title was held, he was asked whether they indicated what they wanted done with their property after their death. When he replied that they did, he was then asked, "What did they state were their desires?" At this time appellants objected because "that would be hearsay evidence." This objection was overruled, and the scrivener then testified, as above set forth as to what each said to him, without further objection or motion to strike.

This testimony was offered in the trial before the jury where the issue was the mental capacity of Ethel Clay to make a will. While parole evidence of the testator's declarations concerning his intention, whether made before, at the time of, or subsequent to, the execution of his will, are ordinarily incompetent upon the question of the construction to be given the language of the will, Winkel v. Streicher, Mo., 295 S.W.2d 56, 59, it is the uniformly accepted rule that when the issue is testamentary capacity, "Any declarations of the testator which tend to show his feelings, methods of thought, and the like, and thus tend to show the condition of his mind at the time that he made his will, are admissible to show his mental capacity at such time, although they are not admissible to show the truth of the facts stated in such declarations." Page on Wills (Bowe-Parker Rev.) § 29.63; Crowson v. Crowson, 172 Mo. 691, 72 S.W. 1065; Klaus v. Zimmerman, Mo.App., 174 S.W.2d 365; 57 Am. Jur. Wills, § 124; 94 C.J.S. Wills § 54. See also Carlson v. First National Bank of Kansas City, Mo., 355 S.W.2d 928, where it was said that "It is permissible to adduce evidence, even certain hearsay perhaps, of a testator's mental condition both before and after the execution of a will * * * but such evidence 'is of no probative value unless it raises a reasonable inference as to mental condition at the time of signing the will.' "

In this case the objection was that the testimony was hearsay, but the statements of Ethel Clay tended to show the condition of her mind, and thus her mental capacity, and were not inadmissible for the reason advanced. We find no basis, as a general proposition, for the admission of the statements of Frank Clay, except by reason of

the peculiar circumstances of this case. Ethel Clay and her husband went together to the scrivener to have reciprocal wills drawn, and in the process Ethel Clay and her husband told the scrivener what they wanted and the reasons therefor. The statements of Frank Clay testified to were made in the presence of Ethel Clay and pertained to their joint wishes and intentions. They were material to show the joint intention of Frank Clay and Ethel Clay in the disposition of their property and therefore tended to show that Ethel Clay knew and understood what she was doing, the nature of her property, and the reasons for the joint requests. For these reasons the statements were material to the issue of the testamentary capacity of Ethel Clay. We find no prejudicial error resulting from overruling the objection to the testimony of the scrivener on the ground that it constituted hearsay.

The final point is that the court erred in commenting upon the testimony and qualifications of appellants' witness George Wilson because it discredited his testimony, and it conveyed to the jury the impression that the value of the real estate owned by Ethel Clay and disposed of by the will was not important.

George Wilson was offered as an expert witness as to the value of real estate. After he testified as to his qualifications he was asked if he had an opinion as to the fair market value of the property. Counsel for respondents objected on the grounds that "it is not material," and that "this witness is not qualified as an expert witness for the value of the land in the neighborhood where this land is located." The court commented as follows: "I am a little concerned over the qualifications. However, with the positive identification [apparently of the property involved], I am going to overrule the objection. I do want to complain just a little bit. The question was here [to?] describe generally the improvements. He has been describing in complete detail here. We are spending too much time on this, I think, in this area.

The objection is overruled. He may answer the question."

We do not see how this comment could have been prejudicial. Appellants do not contend the comment did not correctly relate what had occurred. It pertained only to the proper conduct of the trial, a matter within the court's discretion. However, in any event, the complete answer to this contention is that there was no objection entered at the time and no request was made for any remedial action by the court. There is no issue preserved for appellate review. Paige v. Missouri Pac. R. Co., Mo., 323 S.W.2d 753.

The judgment is affirmed.

BARRETT, C., concurs for reasons set forth in Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118.

PRITCHARD, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.